**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

REINALDO OTONIEL CARRILLO-JAIME,
aka Reinaldo Carrillo, Reinaldo
Otoniel Carrillo,

No. 06-74581

*Petitioner,*

Agency No.
A042-483-280

v.

ERIC H. HOLDER Jr., Attorney
General,

OPINION

*Respondent.*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 9, 2009—San Francisco, California

Filed July 15, 2009

Before: Dorothy W. Nelson, William A. Fletcher and
Richard C. Tallman, Circuit Judges.

Opinion by Judge William A. Fletcher;
Concurrence by Judge Tallman

8885

**COUNSEL**

Kari Elisabeth Hong, Portland, Oregon, for the petitioner.

James Arthur Hunolt, Gladys Marta Steffens Guzman, Mona Maria Yousif, United States Department of Justice, Washington, D.C., for the respondent.

**OPINION**

W. FLETCHER, Circuit Judge:

Petitioner Reinaldo Otoniel Carrillo-Jaime, a citizen of El Salvador and lawful permanent resident of the United States, pled guilty in 2005 to violating Section 10801 of the California Vehicle Code, which prohibits owning or operating a "chop shop." The government thereafter initiated removal proceedings. The Immigration Judge ("IJ") held that Carrillo-Jaime's conviction under § 10801 categorically qualified as an aggravated felony theft offense under 8 U.S.C. § 1101(a)(43)(G) and ordered him removed. The Board of Immigration Appeals ("BIA") affirmed.

We hold under the categorical approach of *Taylor v. United States*, 495 U.S. 575 (1990), that a conviction under Cal. Veh. Code § 10801 is not an aggravated felony theft offense under § 1101(a)(43)(G). We further hold that the record is not sufficient to establish that Carrillo-Jaime's § 10801 conviction is an aggravated felony theft offense under the modified categorical approach. We grant the petition for review and remand to the BIA for further proceedings.

## I. Background

Carrillo-Jaime, a citizen of El Salvador, was admitted to the United States as a lawful permanent resident in June 1991. In August 1993, he pled guilty to receiving stolen property in violation of Cal. Pen. Code § 496(a) and was sentenced to one year in prison. Eleven-and-a-half years later, in March 2005, he pled guilty to operating a chop shop in violation of Cal. Veh. Code § 10801 and was sentenced to two years in prison.

In September 2005, the government charged Carrillo-Jaime with removability under 8 U.S.C. § 1227(a)(2)(A)(i) for being convicted of a crime involving moral turpitude committed within five years after admission, and under 8 U.S.C. § 1227(a)(2)(A)(ii) for being convicted of two crimes involving moral turpitude any time after admission. The IJ ordered him removed.

On appeal, the BIA held that Carrillo-Jaime was eligible for waiver of his 1993 conviction under Immigration and Naturalization Act Section 212(c), 8 U.S.C. § 1182(c) (repealed 1996). If that conviction were waived, he would no longer be removable because only his 2005 conviction would remain. That crime was committed more than five years after Carrillo-Jaime's admission. The BIA remanded to the IJ for further proceedings.

On remand, the government brought a new charge against Carrillo-Jaime based on his 2005 conviction under Cal. Veh. Code § 10801. The government charged that this conviction rendered him removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because it was a conviction for an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G).

The IJ held that Carrillo-Jaime's 2005 violation of Cal. Veh. Code § 10801 qualified categorically as a theft offense under 8 U.S.C. § 1101(a)(43)(G) and ordered him removed. The IJ did not rule on Carrillo-Jaime's request for a Section

212(c) waiver of his 1993 conviction. The BIA affirmed, and Carrillo-Jaime petitioned for review in this court.

## II.  Standard of Review

We review *de novo* whether an offense constitutes an aggravated felony for which an alien is removable. *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 909 (9th Cir. 2004).

## III.  Discussion

### A.  Categorical Approach

We first analyze Carrillo-Jaime's conviction under Cal. Veh. Code § 10801 under the categorical approach of *Taylor* to determine whether it is a theft offense under § 1101(a)(43)(G).

**[1]** "Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). A "theft offense (including receipt of stolen property) . . . for which the term of imprisonment [is] at least one year" constitutes an aggravated felony. *Id.* § 1101(a)(43)(G). We have defined "theft offense" under § 1101(a)(43)(G) as "[1] a taking of property or an exercise of control over property [2] without consent [3] with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *United States v. Corona-Sanchez*, 291 F.3d 1201, 1205 (9th Cir. 2002) (en banc) (quoting *Hernandez-Mancilla v. INS*, 246 F.3d 1002, 1004 (7th Cir. 2007) (bracketed numbers added)), *superceded on other grounds* by U.S.S.G. § 2L1.2 cmt. n.4 (2002). If a violation of § 10801 satisfies these three elements, it constitutes a theft offense under § 1101(a)(43)(G).

Cal. Veh. Code § 10801 provides:

Any person who knowingly and intentionally owns or operates a chop shop is guilty of a public offense and, upon conviction, shall be punished by imprisonment in the state prison for two, three, or four years, or by a fine of not more than fifty thousand dollars ($50,000), or by both the fine and imprisonment, or by up to one year in the county jail, or by a fine of not more than one thousand dollars ($1,000), or by both the fine and imprisonment.

Cal. Veh. Code § 250 defines "chop shop" as

any building, lot, or other premises where any person has been engaged in altering, destroying, disassembling, dismantling, reassembling, or storing any motor vehicle or motor vehicle part known to be illegally obtained by theft, fraud, or conspiracy to defraud . . . .

A violation of § 10801 clearly satisfies the first and third elements of "theft offense" under § 1101(a)(43)(G).

**[2]** The first element is "exercise of control over property." That element is satisfied because *owning* a chop shop where motor vehicles are "alter[ed], destroy[ed], disassembl[ed], dismantl[ed], reassembl[ed], or stor[ed]" necessarily implies possession of those vehicles, which, in turn, necessarily implies exercising control over them. "[P]ossession is of course equivalent to an exercise of control." *Randhawa v. Ashcroft*, 298 F.3d 1148, 1153 (9th Cir. 2002). Similarly, *operating* a chop shop necessarily implies "active involvement" in the activities listed above and, therefore, exercising control over the vehicles. *People v. Ramirez*, 94 Cal. Rptr. 2d 76, 80 (Ct. App. 2000).

**[3]** The third element is having the "criminal intent to deprive the owner of rights and benefits of ownership." Section 10801 criminalizes "knowingly and intentionally" own-

ing or operating a premises where property "known to be illegally obtained" is altered so that it will be misidentified, become unidentifiable, or be sold or otherwise disposed. A conviction under § 10801 requires criminal intent. *See People v. Rodriguez*, 2004 WL 2486649 at *8 (Cal. Ct. App. Nov. 4, 2004) ("The 'own or operate' element [of § 10801] is construed broadly to include any person who actively participates in the conduct of altering or disassembling vehicles *with the requisite criminal intent*." (citing *Ramirez*, 94 Cal. Rptr. 2d at 79-80) (emphasis added)).

The second element of "theft offense" under § 1101(a)(43)(G) is taking or exercising control over property "without consent." For the reasons that follow, we conclude that this element is not necessarily satisfied by a conviction under § 10801.

**[4]** Under Cal. Veh. Code § 250, the motor vehicle or motor vehicle part must be obtained "by theft, fraud, or conspiracy to defraud." If, under California law, one can obtain property through theft, fraud, or conspiracy to defraud, and do so with the valid consent of the owner, then a violation of § 10801 does not satisfy the second element of a § 1101(a)(43)(G) theft offense. We consider these possibilities in turn.

### 1.	Obtaining Property by Theft

Section 250 of the California Vehicle Code, defining a "chop shop," proscribes altering, destroying, etc. "any motor vehicle or motor vehicle part known to be illegally obtained by theft." Neither § 10801 nor § 250 defines "theft," so we take the definition from California's general theft statute, which provides in relevant part:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which

has been entrusted to him or her, or who shall know-ingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft.

Cal. Penal Code § 484(a).

In *Corona-Sanchez*, we held that a violation of § 484(a) does not categorically constitute a theft offense under § 1101(a)(43)(G). We so held because § 484(a) sweeps more broadly than generic theft under § 1101(a)(43)(G). Among other things, § 484(a) criminalizes aiding and abetting, which includes promotion and instigation of theft. Further, § 484(a) criminalizes theft of labor and false credit reporting, neither of which is a theft of property. 291 F.3d at 1208. But *Corona-Sanchez* does not resolve our case. Even though § 10801 looks to § 484(a) for its definition of theft, it is much narrower than § 484(a). Section 10801 has no aiding and abetting provision. Moreover, the theft under § 10801 is limited to theft of property, indeed to a subcategory of property — "any motor vehicle or motor vehicle part."

**[5]** Theft of property under Cal. Penal Code § 484(a) includes "larceny, embezzlement, larceny by trick, and theft by false pretenses." *People v. Shannon*, 78 Cal. Rptr. 2d 177, 179 (Ct. App. 1998). "Larceny, larceny by trick, and embezzlement involve taking another's personal property from the owner's possession, without the owner's consent . . . ." *Id.* Therefore, a conviction for any of these kinds of theft satisfies the nonconsent element in § 1101(a)(43)(G).

**[6]** However, theft by false pretenses may be accomplished *with* the owner's consent. Theft by false pretenses has three

elements: "(1) a false pretense or representation, (2) the intent to defraud the owner of his or her property, and (3) the false pretense or representation materially influenced the owner to part with the property." *People v. Levine*, 2007 WL 4248775 at *10 (Cal. Ct. App. Dec. 5, 2007) (citing *People v. Ashley*, 267 P.2d 271, 279 (Cal. 1954)). "Theft by false pretenses does not require that the defendant take the property; it requires that the defendant use false pretenses to induce the other to give the property to him." *Shannon*, 78 Cal. Rptr. 2d at 179. The owner must intend for the defendant "to become the unconditional and unrestricted owner" of the property for it to be theft by false pretenses. *People v. Traster*, 4 Cal. Rptr. 3d 680, 687 (Cal. Ct. App. 2003).

**[7]** If an owner gives property to someone intending that he or she become the unconditional owner, then that person takes the property with the owner's consent. *People v. Chung*, 2007 WL 1463455 at *15 (Cal. Ct. App. May 18, 2007) ("[T]heft by false pretences [sic] involves fraudulently taking possession and obtaining title with the consent of the owner."). Under California law, a person's false pretenses do not necessarily vitiate the owner's consent:

> On the issue of consent, from an analytic standpoint, there are two kinds of fraud: fraud in the fact and fraud in the inducement. The distinction between the two is as follows: in fraud in the fact, the victim is fraudulently induced to consent to the doing of act X; the perpetrator of the fraud, in the guise of doing act X, actually does act Y; in fraud in the inducement, the victim is fraudulently induced to consent to the doing of act X and the perpetrator of the fraud does commit act X.

> Fraud in the fact, it has been said, vitiates consent. . . .

> On the other hand, fraud in the inducement does not vitiate consent. . . . "[T]he basic common law rule

[is] that, unless there is statutory language to the contrary, *whenever lack of consent is a necessary element of a crime, the fact that consent is obtained through misrepresentation will not supply the essential element of nonconsent*."

*People v. Harris*, 155 Cal. Rptr. 472, 478 (Ct. App. 1979) (quoting *People v. Cook*, 39 Cal. Rptr. 802, 804 (Ct. App. 1964)) (emphasis added, brackets in original).

**[8]** "One can commit theft by false pretenses when he or she intentionally passes a bad check and thereby fraudulently obtains possession and title to merchandise . . . ." *Chung*, 2007 WL 1463455 at * 15 (citations omitted). If the owner or operator of a chop shop intentionally gives the owner of a motor vehicle a bad check in exchange for the vehicle and then disassembles the vehicle in the chop shop, that constitutes a violation of § 10801. This is "fraud in the inducement" under *Harris*. Because "misrepresentation will not supply the essential element of nonconsent," the owner's consent has not been vitiated. 155 Cal. Rptr. at 478.

Our decision in *Randhawa v. Ashcroft*, 298 F.3d 1148 (9th Cir. 2002), is not inconsistent with the above analysis. The defendant in *Randhawa* had been convicted of possessing stolen mail in violation of 18 U.S.C. § 1708. Section 1708 prohibits "steal[ing], tak[ing], or abstract[ing], or by fraud or deception obtain[ing]" mail "from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter," as well as possessing any mail so obtained. The question before us was whether a conviction under § 1708 categorically constituted a theft offense under § 1101(a)(43)(G). We held that it did:

Our generic definition of theft offense [under § 1101(a)(43)(G)] also requires a second element,

namely that the exercise of control be without the true owner's consent.

Again, § 1708 contains a functionally equivalent requirement because the government must show that the mail was in fact stolen; once that fact is shown, it has also been shown that there could have been no consent to the possession by the true owner.

298 F.3d at 1153-54.

Despite the fact that § 1708 criminalizes taking mail by fraud or deception, we concluded under the categorical approach in *Randhawa* that there could have been no consent by the owner of the mail. At first blush, this conclusion may seem inconsistent with our conclusion that theft by false pretenses (a species of fraud or deception) under Cal. Veh. Code § 10801 can be accomplished with the consent of the owner. But the apparent inconsistency disappears as soon as one realizes that § 1708 deals with mail that has previously been deposited by the owner in a mail box or some other receptacle. Any fraud used to obtain the mail from the mail box or other receptacle is thus necessarily directed at someone other than the owner of the mail, and the defendant never seeks or obtains the owner's consent.

**[9]** We therefore conclude that one can commit theft of property by false pretenses under Cal. Penal Code § 484(a) with the consent of the owner.

2.   Obtaining Property by Fraud

Under California law, "fraud is a species of theft." *People v. Sanchez*, 6 Cal. Rptr. 3d 271, 277 (Cal. Ct. App. 2004). Other than Cal. Penal Code § 484(a), we have not been able to identify any California statute criminalizing the taking by fraud of motor vehicles or motor vehicle parts.

Theft under Cal. Penal Code § 484(a) includes the taking of property through fraud.[1] *See* Cal. Penal Code § 484(a) ("Every person . . . who shall *fraudulently* appropriate property . . . or who shall knowingly and designedly, by any false or *fraudulent* representation or pretense, *defraud* any other person of . . . personal property, or who causes or procures others to report falsely of his or her wealth . . . and . . . thus . . . obtains credit and thereby *fraudulently* gets or obtains possession of . . . property . . . is guilty of theft.") (emphasis added); *cf. Sanchez*, 6 Cal. Rptr. 3d at 278 (holding that "a conviction for receiving stolen property and a conviction for operating a chop shop would be duplicative," even though one could be convicted of the latter when vehicles are obtained exclusively through fraud); *People v. Rodriguez*, 2004 WL 2486649 (Ct. App. Nov. 4, 2004) (same); *People v. Nguyen*, 2003 WL 23002715 (Ct. App. Dec. 23, 2003) (same); *People v. King*, 96 Cal. Rptr. 2d 817 (Ct. App. 2000) (same). *But see People v. Strohman*, 101 Cal. Rptr. 2d 520, 521 (Ct. App. 2000) ("[P]roperty acquired through fraud, for example, would not fall under the definition of receiving stolen property.").

**[10]** Because "fraud" under Cal. Veh. Code § 10801 is based on Cal. Penal Code § 484(a), which includes fraud in the inducement, the analysis relevant to the consent of the owner is analogous to the analysis in the previous section. We therefore conclude that one can obtain property by fraud under Cal. Penal Code § 484(a) with the consent of the owner.

### 3. Obtaining Property by Conspiracy to Defraud

A chop shop owner or operator may obtain property by conspiracy to defraud in at least two ways. First, he or she

---

[1]We note that the government has not charged Carrillo-Jaime with having been convicted of an aggravated felony under § 1101(a)(43)(M)(i) (fraud with a loss in excess of $10,000). *Compare Nugent v. Ashcroft*, 367 F.3d 162 (3d Cir. 2004).

may conspire to obtain the property by fraud directly from the owner, in which case the fraud analysis in the previous section would apply. Second, a chop shop owner or operator may conspire to obtain property with the consent of the owner in order to defraud someone else. For example, a chop shop owner or operator may conspire with the owner of a vehicle to defraud an insurance company. The owner or operator of the chop shop may obtain a vehicle from the owner with the owner's consent. The owner of the vehicle may then make a claim to the insurance company based on the alleged theft of his vehicle, and may then share the proceeds of the insurance company payout with the owner or operator of the chop shop.

**[11]** We therefore conclude that one can engage in a conspiracy to obtain property under § 10801 with the consent of the owner.

### 4.    Summary

**[12]** Because a "motor vehicle or motor vehicle part" may be obtained with the consent of the owner by theft, by fraud, or by conspiracy to defraud, we conclude that a conviction under § 10801 does not qualify categorically as a § 1101(a)(43)(G) theft offense.

### B.    Modified Categorical Approach

**[13]** We next analyze Carrillo-Jaime's conviction under Cal. Veh. Code § 10801 under the modified categorical approach. The question under the modified categorical approach is whether Carrillo-Jaime "actually was convicted" of each element of a § 1101(a)(43)(G) theft offense. *Martinez-Perez v. Gonzales*, 417 F.3d 1022, 1026 (9th Cir. 2005).

**[14]** The government has presented no evidence that "any motor vehicle or motor vehicle part" over which Carrillo-Jaime exercised control while owning or operating a chop shop was obtained without the owner's consent. Conse-

quently, the government has not established that Carrillo-Jaime committed a § 1101(a)(43)(G) theft offense under the modified categorical approach.

## Conclusion

We hold that a violation of Cal. Veh. Code § 10801 does not categorically qualify as a theft offense under 8 U.S.C. § 1101(a)(43)(G). We further hold that the record does not establish that Carrillo-Jaime's violation of § 10801 constituted a theft offense under the modified categorical approach. We grant the petition for review and remand to the BIA for further proceedings.[2]

**GRANTED and REMANDED**

---

TALLMAN, Circuit Judge, concurring:

One can follow a clear path and still be led astray. The panel has faithfully applied our court's *Taylor* framework in holding a conviction for operating a chop shop under California Vehicle Code § 10801 is not an aggravated felony. I write separately because Congress could not have intended such a result. Were we writing on a clean slate, I would uphold the order of removal.

In considering the "generic" definition, we must consider what Congress had in mind when it wrote the term "theft offense" in 8 U.S.C. § 1101(a), and whether California's chop shop statute would fit within its ambit. As it turns out, Con-

---

[2]In his brief, Carrillo-Jaime requested that we remand with instructions to the government to assign the case to a different IJ. At oral argument, Carrillo-Jaime's lawyer disclosed that the IJ who heard the case has been reassigned to a different Immigration Court. Consequently, Carrillo-Jaime's request is moot.

gress has written a vehicle theft law. The National Motor Vehicle Theft Act, ch. 89, 41 Stat. 324 (1919), commonly known as the Dyer Act and currently codified at 18 U.S.C. § 2312 (2006), provides:

> Whoever transports in interstate or foreign commerce a motor vehicle, vessel, or aircraft, knowing the same to have been stolen, shall be fined under this title or imprisoned not more than 10 years, or both.

In *United States v. Turley*, 352 U.S. 407 (1957), the Supreme Court explained Congress's action in this arena:

> By 1919, the law of most States against local theft had developed so as to include not only common-law larceny but embezzlement, false pretenses, larceny by trick, and other types of wrongful taking. The advent of the automobile, however, created a new problem with which the States found it difficult to deal. The automobile was uniquely suited to felonious taking whether by larceny, embezzlement or false pretenses. . . . The need for federal action increased with the number, distribution and speed of the motor vehicles until, by 1919, it became a necessity. The result was the National Motor Vehicle Theft Act.

*Id.* at 413-14. The Court then proceeded to consider what Congress meant when it used the word "stolen" in the National Motor Vehicle Theft Act. The Court adopted a broad reading of the term, encompassing not only common law larceny, but embezzlement and false pretenses as well:

> A typical example of common-law larceny is the taking of an unattended automobile. But an automobile is no less 'stolen' because it is rented, transported interstate, and sold without the permission of the

owner (embezzlement). The same is true where an automobile is purchased with a worthless check, transported interstate, and sold (false pretenses). Professional thieves resort to innumerable forms of theft and Congress presumably sought to meet the need for federal action effectively rather than to leave loopholes for wholesale evasion.

*Turley*, 352 U.S. at 416-17.

Congress later expanded the National Motor Vehicle Theft Act with passage of 18 U.S.C. § 2314, commonly referred to as the National Stolen Property Act. *See Dowling v. United States*, 473 U.S. 207, 218-20 (1985). This provision encompassed an even broader swath of criminal theft activity, including the transportation of goods known to have been "stolen, converted or taken by fraud," and transporting or traveling in interstate commerce "in the execution or concealment of a scheme or artifice to defraud that person . . . of money or property." 18 U.S.C. § 2314.

The National Motor Vehicle Theft Act, National Stolen Property Act, and *Turley* underscore that the federal understanding of theft offenses, and in particular vehicle theft offenses, has for at least fifty years included theft by false pretenses and fraud. In *Taylor* itself, the Supreme Court relied on *Turley* to highlight the preference for uniform national definitions over state definitions in interpreting federal statutes. *Taylor v. United States*, 495 U.S. 575, 591-92, 595-96 (1990); *see United States v. Cure*, 996 F.2d 1136, 1140 (11th Cir. 1993). Yet our circuit's approach to *Taylor* categorical analysis ignores the guideposts found in federal law.

Each step toward today's result was clear. We originally sought Congress's meaning of "theft offense" by looking to common state definitions. *See Taylor*, 495 U.S. at 598; *United States v. Corona-Sanchez*, 291 F.3d 1201, 1205 (9th Cir. 2002) (en banc). Next, we amalgamated the state definitions

into our own test for what is a "theft offense." *See Corona-Sanchez*, 291 F.3d at 1205 (quoting *Hernandez-Mancilla v. INS*, 246 F.3d 1002, 1009 (7th Cir. 2001)). Finally, today we compare the California chop shop statute to our judicially-crafted "generic" definition to see which is broader. Taken in isolation, each step in this esoteric process appears quite logical. Unfortunately, we never looked back to see whether our decision might be guided by something Congress itself had done. The result here is that engaging in an organized criminal enterprise that takes wrongfully-obtained automobiles, dismantles them, and sells the component parts on the black market, is not an aggravated felony for deportation purposes. An odd result indeed considering ninety years of federal legislation on this issue.