Concurrence by Judge BERZON.
OPINION
PER CURIAM:
An Immigration Judge (“IJ”) incorrectly advised George Camacho Garcia that his prior conviction was for an aggravated felony, and that he was therefore ineligible for relief from removal. Hearing that advice, Garcia waived his appeal to the Board of Immigration Appeals (“BIA”). But the advice was wrong. As a result, Garcia’s waiver of his right to appeal to the BIA was not considered and intelligent, and the BIA should have granted Garcia’s motion for reconsideration.
I.
Garcia, a native and citizen of the Philippines, became a lawful permanent resident in 2004 based on his marriage to a U.S. citizen. In 2009, he pleaded guilty to four charges in California state court, including a violation of California Penal Code § 487(a), and was duly convicted. The corresponding count in the complaint alleged that: “George Camacho Garcia did willfully and unlawfully take money or personal property of a value exceeding four hundred dollars ($400).” Garcia was sentenced to one year and four months in prison for that conviction.
In 2011, the Department of Homeland Security (“DHS”) issued a notice to appear, charging Garcia with removability as an alien convicted of an aggravated felony — specifically a theft offense for which a sentence of at least one year was imposed. See 8 U.S.C. §§ 1227(a)(2)(A)(iii); 1101(a)(43)(G). During an initial hearing, Garcia heard a pre-recorded message explaining the removal process, his appellate rights, and his option to waive appeal. In an ensuing individual colloquy with the IJ, Garcia said that he wished to proceed in *791 English, -which was his “best language,” that he understood his rights, and that he wanted time to obtain a lawyer. The hearing was continued. At a subsequent hearing, Garcia told the IJ he would proceed pro se and again confirmed that English was his best language. Garcia had some difficulty hearing the IJ, who asked Garcia to sit closer so he could hear.
At the second hearing, Garcia filed written pleadings prepared with the assistance of his current counsel, arguing that he was not removable because his section 487(a) conviction was not a categorical aggravated felony. Specifically, he maintained that section 487(a) was overbroad in two ways: It criminalized both theft of labor and also forms of consensual but unlawful taking of property, such as false pretenses, neither of which is included in the generic definition of theft. After DHS filed copies of the abstract of judgment and complaint from his criminal case, the IJ concluded that Garcia’s section 487(a) conviction was an aggravated felony. Looking to the complaint, the IJ held that the conviction was for “taking the money or personal property as such,” rather than theft of labor, but did not address Garcia’s argument regarding consensual but unlawful taking of property. Garcia was ordered removed.
The IJ then explained that Garcia, who remained unrepresented, had the right to appeal but could waive that right. Garcia said he understood. When asked if he waived appeal, Garcia responded: “I would say — so I am not eligible for any relief?” The IJ told him he was not, explaining that, despite Garcia’s marriage to a U.S. citizen, he would need a waiver to adjust his status again, but, given his conviction, he was ineligible for any waiver. The IJ then again confirmed that Garcia understood his options regarding appeal. Garcia said he did, and then stated — three times — that he agreed to waive his right to appeal.[1]
Garcia nevertheless filed a pro se notice of appeal with the BIA, attaching, as his statement of reasons, a copy of his previously filed written pleadings and an argument that his conviction was not an aggravated felony. The BIA dismissed the appeal, noting that Garcia had waived it and holding that, as Garcia had “made no argument that the decision to .waive appeal was not a knowing and intelligent one,” the IJ’s decision was administratively final upon waiver. The case thus was “not properly before” it, the BIA asserted.
Garcia, now represented by counsel, filed a short motion to reconsider, arguing that “at the time he waived appeal, he was confused, had a difficult time hearing the immigration judge, and did not make a knowing, intelligent, and voluntary waiver of his right to appeal.”[2] In an accompanying declaration, Garcia stated that he was scared and confused during the hearing, English was not his first language, and he had a hard time hearing the IJ. He also said that he did not believe his conviction was categorically an aggravated felony, and that he would therefore like to argue for his eligibility for cancellation of removal.
The BIA issued an opinion declining to grant reconsideration. It noted that, although it ordinarily does not have jurisdic *792 tion over motions when it has not assumed initial jurisdiction over a case, it would consider the motion to reconsider because it “challenge[d] the jurisdictional determination in this case.” The BIA went on to reject as inconsistent with the record the assertions in Garcia’s declaration regarding the circumstances of the hearing, noting: that he had told the IJ that he wanted to proceed in English, as it was his best language; that the IJ had explained Gar.cia’s appellate rights to him; that Garcia had confirmed he had listened and understood; that the IJ had told Garcia to sit closer to address his hearing difficulty; and that, at the end of the proceeding, Garcia had unequivocally stated his intent to waive appeal. The upshot, the BIA concluded, was this: “Despite the respondent’s generalized assertions that he was in some manner ‘confused’ about his proceedings, ... the record reflects that he understood he had a right to appeal, but made a knowing and voluntary waiver of this right.” Whether the IJ had given proper advice when he advised Garcia that he was ineligible for relief from removal because of his theft conviction was not addressed in the BIA opinion.
Garcia timely petitioned for review of the BIA reconsideration decision.
II.
We review the denial of a motion to reconsider for abuse of discretion. Tadevosyan v. Holder, 743 F.3d 1250, 1252 (9th Cir.2014). We will reverse such a denial “if it is arbitrary, irrational, or contrary to law.” Yepremyan v. Holder, 614 F.3d 1042, 1044 (9th Cir.2010) (quoting Singh v. I.N.S., 295 F.3d 1037, 1039 (9th Cir.2002)) (internal quotation marks omitted).
The BIA has held that, once the parties waive appeal, it lacks jurisdiction if the waiver is “knowingly and intelligently made.” In re Rodriguez-Diaz, 22 I. & N. Dec. 1320, 1322 (BIA 2000) (citing United States v. Mendoza-Lopez, 481 U.S. 828, 840, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987)).[3] As DHS recognizes, it bears the burden to establish a valid waiver by clear and convincing evidence. See Gomez, 757 F.3d at 893-94.
“Where ‘the record contains an inference that the petitioner is eligible for relief from deportation,’ but the IJ fails to ‘advise the alien of this possibility and give him the opportunity to develop the issue,’ we do not [regard] an alien’s waiver of his right to appeal his deportation order [as] ‘considered and intelligent.’ ” United States v. Pallares-Galan, 359 F.3d 1088, 1096 (9th Cir.2004) (quoting United States v. Muro-Inclan, 249 F.3d 1180, 1182 (9th Cir.2001)) (some internal quotation marks omitted). In this case, the IJ advised Garcia that he was not eligible for any relief because his grand theft conviction was an aggravated felony.[4] That advice was incorrect.
As an initial matter, Garcia did sufficiently exhaust this argument. We are generally barred, “for lack of subject- *793 matter jurisdiction, from reaching the mer-v its of a legal claim not presented in administrative proceedings below.” Barron v. Ashcroft, 358 F.3d 674, 678 (9th Cir.2004). However, “[w]e do not employ the exhaustion doctrine in a formalistic manner.” Ren v. Holder, 648 F.3d 1079, 1083 (9th Cir.2011) (quoting Figueroa v. Mukasey, 543 F.3d 487, 492 (9th Cir.2008)) (internal quotation marks omitted). “ ‘A petitioner cannot satisfy the exhaustion requirement by making a general challenge to the IJ’s decision,’ ” but also “need not ... raise the precise argument below.” Vizcarra-Ayala v. Mukasey, 514 F.3d 870, 873 (9th Cir.2008) (quoting Zara v. Ashcroft, 383 F.3d 927, 930 (9th Cir.2004)).
Here, Garcia’s brief motion to reconsider and accompanying declaration argued that Garcia “did not make a knowing, intelligent, and voluntary waiver of his right to appeal,” reiterated the argument made before the IJ and in the notice of appeal that the conviction was not an aggravated felony, and asserted that, therefore, Garcia was potentially eligible for relief from removal. Garcia did not spell out in so many words that his waiver should be deemed invalid because the IJ incorrectly concluded that his conviction was an aggravated felony and so failed to advise him of potential relief from removal. But Garcia did articulate each essential part of the contention he now raises. As a result, that “issue was before the BIA such that it had the opportunity to correct its error.” Figueroa, 543 F.3d at 492. “Our precedent requires nothing more.” Id. (brackets and internal quotation marks omitted).
Garcia’s declaration indicated that, absent an aggravated felony, he was potentially eligible for cancellation of removal, 8 U.S.C. § 1229b, while on appeal Garcia has argued that, absent an aggravated felony, he was potentially eligible to readjust his status with an 8 U.S.C. § 1182(h)(1)(B) waiver. But that difference is immaterial for present purposes. DHS has made no argument, apart from its contention that his conviction was an aggravated felony, as to the merits of either form of relief, nor has it suggested that the difference between them should matter for exhaustion purposes. Indeed, Garcia may have been eligible for both.[5]
*794 In sum, Garcia sufficiently exhausted the issue we decide: that his waiver was invalid because the IJ incorrectly advised him that his conviction was an aggravated felony and that, for that reason, he was ineligible for relief from removal.
On the merits, we agree with Garcia that his conviction was not an aggravated felony. “In making a determination as to whether a prior conviction qualifies as an aggravated felony for federal deportation purposes, we employ the analytical model set forth in Taylor v. United States, 495 U.S. 575 [110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) ].” Pallares-Galan, 359 F.3d at 1099.
Under Taylor’s categorical approach, the issue is not whether the actual conduct constituted an aggravated felony, but whether the full range of conduct encompassed by the state statute constitutes an aggravated felony, and we look only to the fact of conviction and the statutory definition of the prior offense to make this determination. If we determine that the statute which the defendant was found to have violated is broader in scope than the federal provision — that the state statute proscribes not only conduct that would constitute an aggravated felony but also conduct that would not — then the state conviction may not be used, except under a modified categorical approach. Under the modified categorical approach, the conviction may be used only if the record contains documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction.
Id. (brackets, citations, and internal quotation marks omitted).
As was clear at the time of Garcia’s hearing, a conviction under California Penal Code § 487(a) is not categorically an aggravated felony because, as Garcia argues, section 487(a) is doubly overbroad.[6] First, it permits a conviction for theft of labor, while the generic definition of theft does not. See United States v. Espinoza-Cano, 456 F.3d 1126, 1131 (9th Cir.2006). Second, section 487(a) incorporates the general definition of theft, which is found at California Penal Code § 484(a).[7] An *795 individual may be convicted of theft under section 484(a), and therefore grand theft under section 487(a), even if the victim consented to transfer his property. For example, the California statutes cover deprivation of property by false pretenses, which does not constitute theft under the generic definition. See Carrillo-Jaime v. Holder, 572 F.3d 747, 751-53 (9th Cir.2009). Under that definition, theft is “[1] a taking of property or an exercise of control over property [2] without consent [3] with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent.” Id. at 750 (alterations in original) (emphasis added) (quoting Corona-Sanchez, 291 F.3d at 1205) (internal quotation marks omitted).
The IJ nevertheless found that the conviction was an aggravated felony, applying the modified categorical approach. In doing so, he addressed only the first type of overbreadth, not whether the conviction was for a consensual or non-consensual taking.
The modified categorical approach does not establish that Garcia was convicted of a non-consensual taking. “In the context of a guilty plea, the modified categorical approach inquires whether a guilty plea to an offense defined by a nongeneric statute necessarily admitted elements of the generic offense.” Alvarado v. Holder, 759 F.3d 1121, 1130 (9th Cir.2014) (internal quotation marks omitted). Nothing in the conviction documents in the record — namely, the abstract of judgment' and criminal complaint — establishes that Garcia’s conviction was for non-consensual grand theft.[8]
The complaint charged that Garcia “did willfully and unlawfully take money or personal property.” As the California Supreme Court recently reiterated, in 1927 the California legislature consolidated the crimes previously known as larceny, false pretenses, and embezzlement, inherited from English common and statutory law, into what is now section 484(a). People v. Williams, 57 Cal.4th 776, 785, 161 Cal.Rptr.3d 81, 305 P.3d 1241 (2013). One distinction among these crimes was that larceny required “a ‘trespassory taking,’ which is a taking without the property owner’s consent,” while false pretenses, for example; “involves the consensual transfer of possession as well as title of property.” Id. at 788, 161 Cal.Rptr.3d 81, 305 P.3d 1241 (emphases omitted); see also Carrillo-Jaime, 572 F.3d at 752. This change affected the wording of charging documents:
“The purpose of the consolidation was to remove the technicalities that existed in the pleading and proof of these crimes at common law. Indictments and infor-mations charging the crime of‘theft’ can now simply allege an ‘unlawful taking.’ ... Juries need no longer be concerned with the technical differences between the several types of theft, and can return a general verdict of guilty if they find that an ‘unlawful taking’ has been proved.... The elements of the several types of theft included within section 484 have not been changed, however, and a judgment of conviction of theft, based on a general verdict of guilty, can be sustained only if the evidence discloses the *796 elements of one of the consolidated offenses.”
Williams, 57 Cal.4th at 785-86, 161 Cal.Rptr.3d 81, 305 P.3d 1241 (emphasis added) (quoting People v. Ashley, 42 Cal.2d 246, 258, 267 P.2d 271 (1954)). In other words, the allegation in the complaint in this case, that Garcia did “unlawfully take” property, charges theft in violation of section 484(a), without further indicating which of “the several types of theft” is specifically charged. Id. Thus, the allegations in the complaint do not establish that Garcia was charged and convicted of non-consensual theft, namely larceny, rather than consensual but unlawful taking of property, such as by false pretenses.
United States v. Rivera, 658 F.3d 1073 (9th Cir.2011), is not to the contrary. In Rivera, we concluded that the defendant’s plea to a charge that he “did unlawfully ... steal take and carry away” personal property narrowed the conviction to the generic limits, namely a non-consensual taking. Id. at 1077-78. Although the charge in Rivera did not expressly indicate that the theft was non-consensual, its language closely tracked the portion of section 484(a) that “reflects” the common-law crime of larceny: “the felonious stealing, taking, carrying, leading, or driving, away of the personal property of another.” Williams, 57 Cal.4th at 781-82, 161 Cal.Rptr.3d 81, 305 P.3d 1241. Here, by contrast, the charging language is fully consistent with non-consensual theories of guilt under section 484(a). See id. at 785-86, 161 Cal.Rptr.3d 81, 305 P.3d 1241.
DHS points to language in a different count of the complaint, of which Garcia was not convicted, charging Garcia with using the same victim’s personally identifying information without her authorization. The most likely reading of the complaint, DHS suggests, is that the two counts are based upon the same conduct and that, therefore, the theft was without consent. That possible inference, however, is insufficient to establish that Garcia was convicted of generic theft. Alvarado, 759 F.3d at 1131.
For one thing, the taking of different property from the same victim could be covered in a single complaint. For another, Garcia was not convicted of the “without authorization” count, a circumstance that could indicate he was unwilling to plead guilty to taking the property without authorization or that the prosecution was not confident it could prove that element. So, although one perhaps could infer that the two counts arose from the same conduct, such an inference is in no way compelled. As we held in Alvarado, 759 F.3d at 1131, a bare inference of this sort does not satisfy the modified categorical approach.
In sum, the’ IJ “believed, incorrectly, that [Garcia’s] conviction ... constituted a[n] ... aggravated felony,” and so “erred when [ ]he told [Garcia] that no relief was available” for that reason. Pallares-Galan, 359 F.3d at 1096. In light of the IJ’s error, Garcia’s “waiver of his right to appeal was not considered and intelligent.” Id. (internal quotation marks omitted). It follows that the BIA’s denial of the motion to reconsider was contrary to law and so an abuse of discretion. Yepremyan, 614 F.3d at 1044.[9]
Petition GRANTED and REMANDED.

. In response to the IJ's questioning to ensure Garcia really intended to waive appeal, Garcia stated "I will not appeal no more,” "I just voluntarily deporting myself,” and "I’m waiving my right to an appeal.”

. Garcia styled his filing a motion to reopen, but the BIA construed it as a motion to reconsider. Neither party challenges that construction.

. We note that Mendoza-Lopez indicated that an appeal waiver must be "considered [and] intelligent” in order to satisfy due process. Mendoza-Lopez, 481 U.S. at 840, 107 S.Ct. 2148 (emphasis added); see also, e.g., United States v. Gomez, 757 F.3d 885, 893 (9th Cir.2014). In light of our disposition of this case, we do not address whether this standard is meaningfully different from the BIA’s articulation.

. The IJ’s determination that Garcia’s conviction was an aggravated felony played a role in two distinct issues that arose at the hearing. It was the basis for the charge of removability which the IJ sustained, and it also indicated to the IJ that Garcia was not eligible for relief from removal. Only the latter issue is before us on this petition for review.

. Nothing in the record before the IJ negates Garcia’s apparent eligibility, absent an aggravated felony, for both forms of relief from removal. See United States v. Lopez-Velasquez, 629 F.3d 894, 896 (9th Cir.2010) (en banc) (holding that apparent eligibility exists where the record "raises a reasonable possibility that the petitioner may be eligible for relief”) (internal quotation mark omitted). Garcia would have been eligible for cancellation of removal upon a showing that he “(1) ha[d] been an alien lawfully admitted for permanent residence for not less than 5 years, [and] (2) ha[d] resided in the United States continuously for 7 years after having been admitted in any status.” 8 U.S.C. § 1229b(a). At the time of his removal proceedings, Garcia had been a permanent resident for well over five years. See Padilla-Romero v. Holder, 611 F.3d 1011, 1012, 1014 (9th Cir.2010). Although the record is somewhat unclear on this point, it' appears that Garcia had also continuously resided in the United States for seven years prior to committing the offense for which he was held removable, see 8 U.S.C. § 1229b(d)(l), having been admitted in a non-immigrant status as early as 1996. Similarly, Garcia was apparently eligible for a waiver under § 1182(h)(1)(B) in conjunction with an application to adjust his status again. See Matter of Rivas, 26 I. & N. Dec. 130, 132-33 (BIA 2013). For the § 1182(h)(1)(B) waiver, Garcia would need to show "extreme hardship to [his] United States citizen or lawfully resident spouse, parent, son, or daughter.” 8 U.S.C. § 1182(h)(1)(B). The record indicates that Garcia was, at least at one point, married to a U.S. citizen, but the IJ did not further develop the record as to the status of Garcia’s relationship or any potential extreme hardship, because of his conclusion that Garcia had been convicted of an aggravated felony. Cf. United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir.2000). Finally, Garcia was apparently eligible to again adjust his status, *794 assuming that he was, indeed, still married to the U.S. citizen. See In re Mendez-Moralez, 21 I. & N. Dec. 296, 297-98 (BIA 1996); Agyeman v. I.N.S., 296 F.3d 871, 878 (9th Cir.2002). Insofar as there are gaps in the record regarding Garcia’s eligibility for relief, the evident reason is that the IJ truncated any inquiry into Garcia’s precise circumstances by ruling that, whatever those circumstances were, Garcia had been convicted of an aggravated felony and so was ineligible for relief.

. The version of the statute in effect at the time of Garcia’s conviction provided, in relevant part, "Grand theft is theft committed in any of the following cases: (a) When the money, labor, or real or personal property taken is of a value exceeding four hundred dollars ($400) ..." Cal.Penal Code § 487 (2009). The statute has since been amended to raise the value establishing grand theft to $950. See Cal.Penal Code § 487(a) (2014).

. "[Section] 484(a) defines theft in general,” while "[s]ection 487 ... describes certain circumstances in which theft will constitute grand theft.” United States v. Corona-Sanchez, 291 F.3d 1201, 1206-07 (9th Cir.2002) (en banc), superseded by statute on other grounds as recognized in United States v. Gomez-Mendez, 486 F.3d 599, 604-05 (9th Cir.2007) (footnote omitted). Section 484(a) provides, in relevant part, "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains posses *795 sion of money, or property or obtains the labor or service of another, is guilty of theft.” Cal.Penal Code § 484(a).

. As the question of divisibility was not raised in the briefs and oral argument, and because we reverse on other grounds, we assume for the purposes of this opinion, without deciding, that sections 487(a) and 484(a) are divisible. See Rendon v. Holder, 764 F.3d 1077, 1085 (9th Cir.2014).

. Because we grant the petition on this basis, we do not reach Garcia's other contentions.