[No. E032545. Fourth Dist., Div. Two. Nov. 13, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS SANCHEZ, Defendant and Appellant.

COUNSEL

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Anthony Da Silva, Erika Hiramatsu and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

RICHILI, J.—In a bifurcated trial, a jury found defendant guilty of operating a chop shop (Veh. Code, § 10801)[1] and receiving stolen motor vehicle parts (Pen. Code, § 496, subd. (a)), and not guilty of vehicle theft (§ 10851, subd. (a)). The trial court thereafter found true that defendant had served a prior prison term (Pen. Code, § 667.5, subd. (b)) and that defendant had suffered a prior serious or violent felony strike conviction (Pen. Code, §§ 667, subds. (b)–(i); 1170.12, subds. (a)–(d)). As a result, defendant was sentenced to a total term of nine years in state prison.

On appeal, defendant contends (1) the evidence was insufficient to sustain his conviction for operating a chop shop within the meaning of sections 10801 and 250, and (2) his conviction for receiving stolen property must be set aside because that conviction is a necessarily lesser included offense of operating a chop shop.

---

[1] All future statutory references are to the Vehicle Code unless otherwise stated.

## I

## FACTUAL BACKGROUND

On December 18, 2000, Rakeeb Ali took his 1992 green Honda Accord to the San Bernardino MAACO Paint and Body Shop (MAACO) to have the vehicle repainted. On or about December 26, 2000, Ali received a telephone call, advising him that his car had been stolen from the MAACO lot.

Henry Romero was a manager at the MAACO shop. Defendant began working at the shop in November 2000. Romero recalled that on December 26 defendant engaged in behavior he considered somewhat strange. Specifically, he recalled defendant coming into his office to show him a number of photographs of his family that had been taken over the holidays. Romero thought this was odd because defendant was standing in such a way that Romero's view of the parking lot at the MAACO shop was blocked by defendant. Romero also recalled that when Ali's car was placed outside for completion, defendant pulled his own car in front of the office window, blocking Romero's outside view. It was shortly after these photos were shown that Romero discovered Ali's car was missing. Romero had submitted defendant's name to the police as a suspect in the theft of Ali's car because, prior to the theft, Romero had received a telephone call advising him that Ali's vehicle was going to be stolen by defendant.

The following day, December 27, defendant called Romero and informed him that he would be late for work, and when he did arrive he seemed extremely tired. That same day, Ali was advised that his vehicle had been located a few blocks from defendant's sister's home. Defendant's sister was out of town for the entire month of December, but defendant had access to her garage.

Ali noticed that his vehicle had been severely damaged and stripped of many expensive custom after-market items he had added to the vehicle. He also noted that several engine components and the battery were missing. Among the custom items missing from Ali's Honda were a special spoiler on the rear of the car, custom taillights, custom-built speakers, an amplifier, a CD changer, the engine head, the engine block, the intake system, an Interstate brand battery, a silver and red sway bar, after-market headers, racing pedals, the stereo system, and the stick shift housing. Ali described the missing items and the details about them to Detective Donald Lewis of the San Bernardino County Auto Theft Task Force. Several of Ali's items had distinguishing characteristics, such as stickers he had applied or marks he had caused in installing the items. In addition, a faint "overspray" from painting Ali's car had landed on some parts located under the hood.

On January 5, 2001, Ali was shown defendant's blue Honda Accord, which was the same year and model as Ali's green Honda Accord. Ali identified numerous parts on defendant's vehicle as being identical to the parts removed from his car during the time it had been stolen. Ali recognized his pedals, sway bar, intake system, power wire to the amplifier, air filter, cooling for the intake system, battery, speaker box with speakers, amplifier, and distribution block on the amplifier. On the sway bar and the intake system, Ali noticed residue from his stickers, which had been removed. Ali also recognized his amplifier wire because he had spliced different colored wires to adjust the length. Ali stated that he recognized defendant as an employee of the MAACO shop.

Detective Lewis, who had substantial experience working with auto theft details and was familiar with "chop shops," searched defendant's sister's garage on January 6, 2001. At that time, he discovered other parts matching the descriptions of those missing from Ali's vehicle. He also noted two toolboxes, a scissor-type jack commonly found in Honda vehicles, a box of miscellaneous wiring, and other car parts. Detective Lewis, based on his training and experience in auto theft and chop shop organizations, opined that defendant was operating a chop shop in his sister's garage. He was unable to say, however, where the actual disassembly or dismantlement of Ali's vehicle took place from looking at the parts in the garage.

## II

## DISCUSSION

### A. *Defendant's Conviction for Operating a Chop Shop*

Defendant contends there was insufficient evidence to sustain his conviction for operating a chop shop within the meaning of sections 10801 and 250. We disagree.

Our review of any claim of insufficiency of the evidence is limited. " 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." [Citations.]' [Citation.]" (*People v. Parra* (1999) 70 Cal.App.4th 222, 225 [82 Cal.Rptr.2d 541], quoting *People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374]; see also *People v. Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618]; *People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].)

Given this court's limited role on appeal, defendant bears an enormous burden in claiming there was insufficient evidence to sustain his conviction for operating a chop shop. ■ If the verdict is supported by substantial evidence, we are bound to give due deference to the trier of fact and not retry the case ourselves. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319, 326 [61 L.Ed.2d 560, 99 S.Ct. 2781]; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].) A reviewing court is precluded from making its own subjective determination of guilt. (*Jackson,* at p. 319, fn. 13.) It is the exclusive function of the trier of fact to assess the credibility of witnesses and draw reasonable inferences from the evidence. (*People v. Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110]; *People v. Hale* (1999) 75 Cal.App.4th 94, 105 [88 Cal.Rptr.2d 904].) The standard of review applies even "when the conviction rests primarily on circumstantial evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 [99 Cal.Rptr.2d 1, 5 P.3d 68].) Here, the record discloses ample evidence to support the jury's verdict.

Section 10801 states: "Any person who knowingly and intentionally owns or operates a chop shop is guilty of a public offense." Section 250 defines a chop shop as "any building, lot, or other premises where any person has been engaged in altering, destroying, disassembling, dismantling, reassembling, or storing any motor vehicle or motor vehicle part known to be illegally obtained by theft . . . in order to do either of the following: [¶] (a) Alter . . . the identity, including the vehicle identification number, of a motor vehicle or motor vehicle part, in order to misrepresent the identity of the motor vehicle or motor vehicle part, or to prevent the identification of the motor vehicle or motor vehicle part. [¶] (b) Sell or dispose of the motor vehicle or motor vehicle part."

In the present matter, defendant contends that, because Detective Lewis was unable to conclude that Ali's car had specifically been stripped in defendant's sister's garage, there was insufficient evidence to support his conviction of operating a chop shop out of the garage. We reject this contention, because several toolboxes, miscellaneous wiring and wiring assemblies, and numerous auto parts, including parts from vehicles other than Ali's Honda, were found in defendant's sister's garage. In addition, defendant had unmonitored access to the garage at the time, and the garage was located a few blocks from where Ali's stripped vehicle was recovered. Ali's numerous vehicle parts, which were missing from Ali's vehicle, were found to be installed in defendant's car.

Moreover, based on his training and experience in auto theft and chop shop organizations and the totality of circumstances in this case, Detective Lewis opined that defendant was operating a chop shop in his sister's garage. Based

on the foregoing, the jury reasonably could have concluded that defendant utilized his sister's garage as a chop shop when he stripped the vehicle parts from Ali's vehicle and installed them in his own vehicle. We conclude the circumstances reasonably support the view that defendant was operating a chop shop.

Without citation to authority, however, defendant maintains that his conduct in this case, even assuming that some of the parts were removed from Ali's vehicle in his sister's garage, "does not constitute operating a chop shop within the meaning of the statute," because the Legislature did not intend to include "conduct not involving a planned, continuous use of the facility for purposes of dismantling stolen vehicles and dissemination of the parts as part of an ongoing business operation." We find defendant's argument unpersuasive.

" 'The most basic principle of statutory construction is that courts must give effect to statutes according to the ordinary import of the language used in framing them. [Citation.] "If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." [Citations.]' [Citation.] Put another way, the ascertainment of legislative intent must 'begin with the language of the statute itself. [Citation.] That is, we look first to the words the Legislature used, giving them their usual and ordinary meaning. [Citation.] "If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' " [Citation.]' [Citations.]" (*People v. Herman* (2002) 97 Cal.App.4th 1369, 1380–1381 [119 Cal.Rptr.2d 199]; see also *In re J.W.* (2002) 29 Cal.4th 200, 209 [126 Cal.Rptr.2d 897, 57 P.3d 363]; *Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1000 [90 Cal.Rptr.2d 236, 987 P.2d 705].)

Here, the language of sections 10801 and 250 is clear and unambiguous. There is nothing in the language of the statutes to suggest the Legislature intended to include only conduct involving a planned, continuous use of a facility for purposes of dismantling stolen vehicles and dissemination of the vehicle components as part of an ongoing business operation. Furthermore, the term "operate" is not limited to those who prepare, set up, or propose a scheme, nor is it limited to those with supervision and control. (See, e.g., *People v. Ramirez* (2000) 79 Cal.App.4th 408, 415 [94 Cal.Rptr.2d 76].) Hence, defendant's conduct here was sufficient to fall within that proscribed by the statutes.

## B. *Defendant's Conviction for Receiving Stolen Property*

Defendant next contends that, if his conviction of a chop shop violation stands, we must reverse the conviction for receiving stolen property (Pen. Code, § 496, subd. (a)) under this court's holding in *People v. King* (2000) 81 Cal.App.4th 472 [96 Cal.Rptr.2d 817] (*King*), which held that receiving stolen property is a necessarily included offense within the definition of operating a chop shop. If defendant's conviction for receiving stolen property was part and parcel of the offense of operating a chop shop, we would agree. Under the particular circumstances of this case, however, we find that defendant was properly convicted of both offenses.

In *King*, we observed that the elements of receiving stolen property are: (1) stolen property; (2) knowledge that the property was stolen; and (3) possession of the stolen property. (*King, supra,* 81 Cal.App.4th at p. 476, citing *People v. Land* (1994) 30 Cal.App.4th 220, 223 [35 Cal.Rptr.2d 544].) "The offense of owning or operating a chop shop . . . ," we further noted, "likewise requires stolen property, i.e., stolen motor vehicles/parts, the defendant's knowledge that the property was stolen, and possession of the stolen property, but adds the further requirement that the defendant intentionally own or operate a place in which such stolen property is altered, destroyed, disassembled, dismantled, reassembled, or stored in order to change their identity or to sell them." (*King,* at p. 476.) Thus, we concluded, "all of the elements of receiving stolen property are necessarily included in running a chop shop where, as here, it is clear from the information that the stolen property alleged to have been received is the same property, i.e., the stolen motor vehicles, that constitute the chop shop violation." (*Ibid.*)

Defendant claims the benefit of our ruling in *King*, arguing that, since his convictions for receiving stolen property (the vehicle parts from Ali's Honda) and operating a chop shop were based upon the theft of Ali's Honda, the conviction for receiving stolen property must be reversed.

The People respond by asking us to follow *People v. Strohman* (2000) 84 Cal.App.4th 1313 [101 Cal.Rptr.2d 520] (*Strohman*), which was decided by our colleagues in the Second District, Division Six. That case disagreed with our conclusion in *King* and concluded that receiving stolen property was not a necessarily included lesser offense to the charge of owning or operating a chop shop. (*Strohman,* at p. 1316.) The *Strohman* court apparently accepted the People's suggestion there that chop shop violations may be predicated on possession of property obtained " 'by theft, fraud, or conspiracy to defraud,' " but that property obtained by fraud "would not fall under the definition of receiving stolen property," which "applies only to property stolen or obtained by theft or extortion." (*Ibid.*)

We believe that *King* was correctly decided. The *Strohman* court failed to appreciate that fraud is a species of theft. Penal Code section 484, subdivision (a) defines theft as: "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall *fraudulently* appropriate property which has been entrusted to him, or who shall knowingly and designedly, by any false or *fraudulent* representation or pretense, *defraud* any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby *fraudulently* gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft." (Italics added.)

Furthermore, the *Strohman* court "erroneously treated every form of theft as a separate offense." (*People v. Ortega* (1998) 19 Cal.4th 686, 696 [80 Cal.Rptr.2d 489, 968 P.2d 48] (*Ortega*).) As we pointed out in *King*, " '[f]ocusing upon whether a particular form of theft necessarily is included within the offense of robbery misses the point . . . that the crime of theft, in one form or another, always is included within robbery.' [Citation.] '[G]rand theft is simply one of the two degrees of the general crime of theft, and . . . the theft of an automobile is simply one of the many forms of theft that constitute grand theft. [¶] Theft, in whatever form it happens to occur, is a necessarily included offense of robbery. . . . We reaffirm the well-established rule that a defendant may not be convicted of both robbery and grand theft based upon the same conduct.' [Citation.]" (*King, supra,* 81 Cal.App.4th at p. 478, citing and quoting *Ortega,* at pp. 697, 698–699.) Hence, "[t]he determination of whether an offense cannot be committed without necessarily committing the included offense must be based . . . upon the statutory definitions of both offenses and the language of the accusatory pleading. [Citations.]" (*Ortega,* at p. 698.) Applying this test, the *Ortega* court explained, "[W]hether defendants properly were convicted of both robbery and theft depends upon whether those convictions were based upon the same conduct." (*Id.* at p. 699.)

Accordingly, we are not persuaded by *Strohman*. Nonetheless, defendant's reliance on *King* is misplaced under the circumstances present here.

 Under our analysis in *King*, a conviction for receiving stolen property and a conviction for operating a chop shop would be duplicative also where it is clear not only that the same stolen property is involved in both charges, but that the same possession is involved in both charges. That is, if the conviction for receiving stolen property is predicated upon the *chop shop's* possession of the same property, then the stolen property offense is a lesser included offense of the chop shop violation. Here, however, defendant possessed the stolen vehicle parts from Ali's Honda, which he later installed into his own Honda,

separately from the chop shop's possession of the same items. This dual use of the stolen parts for two separate purposes make him subject to the separate Penal Code section 496 conviction.

Ali's Honda had been stolen from the MAACO lot on or about December 26, 2000. The following day, December 27, Ali's vehicle was recovered approximately a few blocks (about 700 to 800 yards) from defendant's sister's home. When Ali's vehicle was recovered, the car had been stripped of all the custom after-market accessories as well as part of the engine and a wheel. On January 5, 2001, it was discovered that some of the vehicle parts from Ali's Honda had been installed into defendant's Honda, which was the same year and model as Ali's Honda. Defendant used and possessed some of the vehicle parts from Ali's Honda (i.e., received stolen property) personally, separate and apart from the chop shop's possession of the parts of the dismantled Honda. Defendant therefore may properly stand convicted of both violations.

## III

## DISPOSITION

The judgment is affirmed.

Hollenhorst, Acting P. J., and Ward, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 4, 2004. George, C. J., did not participate therein. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.