Filed 9/25/13  P. v. Nguyen CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>STEVEN PHUNG NGUYEN,<br><br>　　Defendant and Appellant. | G047473<br><br>(Super. Ct. No. 08WF1904)<br><br>O P I N I O N |

　　　　　　Appeal from a judgment of the Superior Court of Orange County, Francisco P. Briseno, Judge.  Affirmed.

　　　　　　Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood, Deputy Attorney General, for Plaintiff and Respondent.

　　　　　　　　　　*　　　　　*　　　　　*

A jury convicted Steven Phung Nguyen of two counts of attempted voluntary manslaughter (Pen. Code, § 664, subd. (a), § 192, subd. (a); counts 1 and 2; all statutory citations are to the Penal Code unless noted) and active participation in a criminal street gang (§186.22, subd. (a); count 3). The jury also found Nguyen committed the attempted homicide offenses for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)), and personally used a firearm during commission of the crime (§ 12022.5, subd. (a).) Defendant contends there is insufficient evidence to support the gang enhancement, and the trial court abused its discretion in concluding he was legally ineligible for probation. For the reasons expressed below, we affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Late in the evening of September 5, 2008, defendant and a group of friends left a house party and went to Alerto's, a Mexican fast food restaurant in Westminster. The group ordered food and ate on the patio. Defendant and one of the other group members, codefendant Jim Tran, were members of the Cadillac Boyz criminal street gang (also known as "Caddy Lost Boyz" or "CLB"). Many of the other group members belonged to Asian Gang, a criminal street gang closely allied with CLB.

Meanwhile, Dan Pham, Tu Huynh, and Benjamin Dat Nguyen (Benjamin Nguyen) drove to Alerto's after leaving a different party where they had been drinking. Pham was a former Asian Gang member who was no longer affiliated with the gang. Huynh and Benjamin Nguyen were members of Tiny Viet Boyz ("V Boys" or "TVB"), another criminal street gang not affiliated with CLB or Asian Gang.

As defendant's group began to leave Alerto's, Pham's white Honda approached the restaurant. Huynh, a passenger in Pham's car, recognized some "Cadillac

2

Boyz" in the group and said he wanted to fight one of them. Pham parked the car in a nearby parking lot and remained in the car. Huynh and Benjamin Nguyen jumped out of the car and ran towards defendant and his group. As they approached, Huynh and Benjamin Nguyen "mad dogged," or stared down, the other group and yelled out "V Boys" to identify or "claim" their gang. Defendant responded by yelling "Cadillac Boyz," and others in the crowd yelled, "Asian Gang." Huynh and defendant engaged in a heated argument while the others formed a semicircle around them. Benjamin Nguyen was "laying low" behind Huynh.

During the argument, codefendant Tran walked to a car, retrieved a firearm covered by a white sweater, and returned to the group. Tran uncovered the gun and handed it to defendant who took the gun and pointed it at Huynh. Huynh became angry and challenged defendant to shoot him. A member of the crowd asked Huynh to calm down, but Huynh refused. Defendant eventually fired two warning shots into the ground and then said "do you want to get blasted?" Huynh continued to challenge defendant to shoot him. Defendant then fired one shot at Huynh and another at Benjamin Nguyen, hitting Huynh in the leg and Benjamin Nguyen in the arm or chest. The two men ran back to Pham's car, and Pham drove them to the hospital.

Detective James Wilson, the prosecution's gang expert, testified that CLB had about 15 members at the time of the shooting. CLB was closely associated with Asian Gang, which had at least 20 members. Wilson testified gang confrontations occur when a gang member approaches another and demands that person "claim" or identify a gang affiliation. Commonly known as a "hit up," it is often seen as a direct challenge, especially when gangs are rivals, and backing down from a hit up would result in a gang member losing respect. A hit up could also simply be an inquiry to learn whether

3

another person is a nonrival. Wilson also testified "respect is everything" in the Asian gang culture, and is earned by being dangerous and inspiring fear. Committing crimes also earns respect, which increases in proportion to the gravity of the crime. This peculiar notion of respect in the gang culture requires an insulted gang member to respond with a greater affront or with violence. This response is known as "payback," and allows the insulted gang member to regain his respect.

Wilson opined defendant and codefendant Tran were active participants in CLB at the time of the shooting. Asked to assume a hypothetical situation in which a hit up occurs between two rival gangs, Wilson believed a shooting similar to defendant's would benefit the shooter's entire gang by increasing respect for the gang. Wilson acknowledged CLB, Asian Gang, and TVB were not known to be rivals.

Following trial in February 2012, the jury convicted defendant Nguyen as noted above. The trial court sentenced him to a 13-year prison term, comprised of concurrent three year terms for attempted voluntary manslaughter, and an additional 10 years for the gang enhancement. The court stayed (§ 654) terms for active gang participation and the gun enhancement.

II

DISCUSSION

A.  *Substantial Evidence Supports the Gang Enhancement*

Defendant challenges the sufficiency of the evidence to support the gang enhancement. He contends the evidence does not show he specifically intended to promote, further, or assist in any criminal conduct by other gang members. In evaluating this issue we must view the evidence in the light most favorable to the judgment. (*People v. Elliot* (2005) 37 Cal.4th 453, 466.) It is the trier of fact's exclusive province to assess

4

witness credibility and to weigh and resolve conflicts in the evidence. (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.) We therefore presume the existence of every fact reasonably inferred from the evidence in support of the judgment. (*People v. Crittenden* (1994) 9 Cal.4th 83, 139.) The test is whether substantial evidence supports the conclusion of the trier of fact, not whether the appellate panel is persuaded the defendant is guilty beyond a reasonable doubt. (*Ibid*.; *People v. Johnson* (1980) 26 Cal.3d 557, 576.) In other words, reversal is not warranted even though the circumstances could be reconciled with a contrary finding. (*People v. Bean* (1988) 46 Cal.3d 919, 932-933.) Thus, a defendant attacking the sufficiency of the evidence "bears an enormous burden." (*People v. Sanchez, supra*, 37 Cal.4th at p. 330.)

To establish the gang enhancement under section 186.22, subdivision (b)(1), the prosecution must prove two elements: "first, that the defendant committed a felony (a) for the benefit of, (b) at the direction of, or (c) in association with a criminal street gang; and second, that in connection with the felony, the defendant harbored the *specific intent* to (a) promote, (b) further, or (c) assist in any criminal conduct by gang members." (*In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1358.) Therefore, the gang enhancement applies "when a defendant has personally committed a gang-related felony with the specific intent to aid members of that gang." (*People v. Albillar* (2010) 51 Cal.4th 47, 67-68 (*Albillar*).) Defendant does not dispute the evidence supports the first element of the gang enhancement finding. (*Id.* at p. 60 [a criminal offense is subject to increased punishment under the STEP Act only if the crime is gang related; the defendants came together *as gang members* to sexually assault victim and thus committed these crimes in association with the gang; expert opinion the sexual assault benefited the gang by enhancing its reputation for viciousness raised a reasonable inference the defendants

5

committed the assault to benefit their criminal street gang]; see *People v. Romero* (2006) 140 Cal.App.4th 15, 19 (*Romero*) [expert opinion shooting of an African-American man would elevate status of the shooters and their Latino gang].)  Instead, Nguyen contends he lacked the specific intent to promote, further, or assist in any criminal conduct by criminal street gang members.

The specific intent requirement "is unambiguous and applies to *any* criminal conduct, without a further requirement that the conduct be 'apart from' the criminal conduct underlying the offense of conviction sought to be enhanced.  [¶]  . . . [S]ection 186.22 (b)(1) [does not] require[] the specific intent to promote, further, or assist a *gang-related* crime.  The enhancement already requires proof that the defendant commit a gang-related crime in the first prong—i.e., that the defendant be convicted of a felony committed for the benefit of, at the direction of, or in association with a criminal street gang.  [Citation.]  There is no further requirement that the defendant act with the specific intent to promote, further, or assist a *gang;* the statute requires only the specific intent to promote, further, or assist criminal conduct by *gang members.*" (*Albillar*, *supra*, 51 Cal.4th at pp. 66-67.)  To prove a defendant specifically intended to help gang members commit a crime, it is sufficient to show the defendant intended to commit the crime, he intended to commit it in association with his accomplices, and he knew his accomplices were members of a gang.  (*People v. Morales* (2003) 112 Cal.App.4th 1176, 1197.)  Commission of a crime in concert with known gang members is substantial evidence supporting the inference the defendant acted with the specific intent to promote, further or assist gang members in the commission of the crime.  (*People v. Villalobos* (2006)145 Cal.App.4th 310, 322; see *Romero, supra,* 140 Cal.App.4th at p. 20 [ample evidence

6

appellant intended to commit a crime, that he intended to help his accomplice commit a crime, and he knew his accomplice was a member of his gang].)

Here, defendant and codefendant Tran were active CLB criminal street gang members. Tran gave the gun to defendant, who used it to shoot the victims, members of a different criminal street gang, after the victims aggressively confronted the CLB and Asian Gang members by "mad dogging" and "claiming" their gang. The jury reasonably could infer defendant harbored the specific intent to assist Tran in committing attempted voluntary manslaughter from evidence they associated together as gang members and acted in concert to execute the shooting.

Defendant argues "[i]t is not reasonable to infer that while acting on a sudden quarrel or heat of passion . . . [he] simultaneously *specifically intend*[*ed*] to promote, further, or assist" Tran's conduct. We disagree. The jury reasonably could infer that while Nguyen fired the shots in the heat of passion, he did so with the intent to assist Tran in assaulting their gang rivals. Indeed, the evidence supports the inference defendant reacted angrily because rival gang members challenged him and his gang cohorts. Put another way, the jury could conclude the fuel for defendant's passion was the insult to him and his gang, and he intended that his violent response would remedy this affront to his gang.

Defendant also argues "there was no evidence that appellant went looking for a gang confrontation and no evidence that appellant did anything but defend himself, albeit excessively." He also asserts it "makes little sense" to conclude Nguyen acted to bolster the reputation of his gang because "[t]his was not a gang 'hit-up;' the two gangs were not rivals."

7

The prosecution proved defendant assisted his fellow gang member Tran in committing two gang-related counts of attempted voluntary manslaughter. It was not required to prove defendant sought out a gang confrontation. The jury rejected defendant's claim he acted in self-defense, a finding amply supported by the record. Huynh was unarmed and did not physically assault defendant, and Benjamin Nguyen was "laying low" in the background and not actively engaged in the confrontation. Finally, the evidence belies defendant's assertion this was not a gang confrontation. Huynh and Benjamin Nguyen aggressively approached defendant's group, "mad dogged" defendant and yelled out "V Boys" to identify their gang. Defendant responded by announcing he belonged to "Cadillac Boyz," and others in his group yelled, "Asian Gang." As the gang expert explained, the circumstances of this violent encounter are understandable only when one learns of the peculiar definition of respect prevalent among gangs. Huynh and Benjamin Nguyen challenged defendant, who faced the prospect of losing respect for him and his gang unless he responded with a greater insult or with violence. Ample evidence supported the conclusion defendant responded to promote his gang by assaulting the victims for their disrespectful treatment of defendant and his gang. (*Romero*, *supra*, 140 Cal.App.4th at p. 20 [specific intent existed even though neither of the victims were known gang members].)

B.    *The Trial Court Understood Its Scope of Discretion to Grant Probation*

Nguyen also argues the trial court abused its discretion when it denied him probation. At the September 2012 sentencing hearing, the trial judge made the following statement to defendant's family: "I just need to say something not to [the defense] or to the district attorney, I need to say something to the family, because they have written letters to me saying that the court should exercise leniency because of who the defendant

8

is, but I need to tell them and I need to tell your client, in the State of California, the law is that if you use a firearm, you cannot get probation, and there are some other statutes that say exactly the same thing. [¶] I think, I trust they won't agree with that. However, they are not in court every day, and they do not understand that the court does not have the discretion to give him probation. They would like him to be released, placed on probation, and for him to return to them in hopes that he would in the future comply with all the laws, but I want to make sure that they understand what the laws are in the State of California, and that I'm a trial judge, and I am asked to follow those laws."

The court subsequently imposed sentence: "So as indicated before, the first sentencing decision as to whether probation should or should not be granted is the first issue before the court, and probation is denied on the basis of what the court has said. By law, the defendant is not eligible for probation and I should make some further record in that regard. [¶] The record indicates that defendant possessed a firearm, and that he discharged a firearm and that he inflicted physical harm to two separate victims. As a result of these findings, the defendant is not eligible for probation under provisions of Penal Code section 1203, Penal Code section 667.5, Penal Code section 1192.7, and Penal Code section 12022.5(a)."

As a general rule, "[t]he trial court has broad discretion to grant or deny probation, *except where otherwise limited by statute*, and a decision denying probation will be reversed only upon a clear showing of abuse and that the court acted in a capricious or arbitrary manner. [Citations.] A heavy burden is placed on a defendant in attempting to show an abuse of discretion in denying a request for probation." The court abuses its discretion, however, if it misunderstands the scope of its discretion or misapplies the law. (*People v. Marquez* (1983) 143 Cal.App.3d 797, 803 (italics added.)

9

"Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court." (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8). Thus, where a trial court denies probation without an accurate understanding of its discretion to grant probation, "remand for resentencing is appropriate." (*People v. Bruce G.* (2002) 97 Cal.App.4th 1233, 1248).) But, "[i]t is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties." (*People v. Mack* (1986) 178 Cal.App.3d 1026, 1032.) Accordingly, a party alleging the trial court did not understand the law must provide sufficient evidence to overcome this presumption.

The applicable rule concerning probation where a deadly weapon such as a firearm is used is found in section 1203, which reads: "Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to . . . [¶] [a]ny person who used, or attempted to use, a deadly weapon upon a human being in connection with the perpetration of the crime of which he or she has been convicted." (§ 1203, subd. (e).) Thus, California law presumptively prohibits a court from granting probation to a defendant in Nguyen's position.[1]

California Rules of Court, rule 4.413 provides guidance for the trial court in determining whether a case is unusual: "(a) The court must determine whether the defendant is eligible for probation. (b) If the defendant comes under a statutory provision prohibiting probation 'except in unusual cases where the interests of justice would best be served,' or a substantially equivalent provision, the court should apply the criteria in (c) to evaluate whether the statutory limitation on probation is overcome; and if

---

[1]      Probation may not be granted *at all* to a person who personally used a firearm during the commission or attempted commission of specified crimes, but attempted voluntary manslaughter is not among them. (§ 1203.06(a)(1); § 1203.06(b)(2).)

it is, the court should then apply the criteria in rule 4.414 to decide whether to grant probation. (c) The following facts may indicate the existence of an unusual case in which probation may be granted if otherwise appropriate: (1) A fact or circumstance indicating that the basis for the statutory limitation on probation, although technically present, is not fully applicable to the case, including: (A) The fact or circumstance giving rise to the limitation on probation is, in this case, substantially less serious than the circumstances typically present in other cases involving the same probation limitation, and the defendant has no recent record of committing similar crimes or crimes of violence; and (B) The current offense is less serious than a prior felony conviction that is the cause of the limitation on probation, and the defendant has been free from incarceration and serious violation of the law for a substantial time before the current offense. (2) A fact or circumstance not amounting to a defense, but reducing the defendant's culpability for the offense, including: (A) The defendant participated in the crime under circumstances of great provocation, coercion, or duress not amounting to a defense, and the defendant has no recent record of committing crimes of violence; (B) The crime was committed because of a mental condition not amounting to a defense, and there is a high likelihood that the defendant would respond favorably to mental health care and treatment that would be required as a condition of probation; and (C) The defendant is youthful or aged, and has no significant record of prior criminal offenses."

Here, the probation report, which the court stated it had reviewed, cited California Rules of Court, rule 4.413 and stated, "As convicted, the defendant is *presumptively ineligible for probation pursuant to 1203(e)(2) PC*, in that he personally used a deadly weapon. . . . [¶] A review of the unusual circumstances does not reveal any circumstance

11

that would render the defendant eligible for a grant of probation." (Italics added; citing Cal. Rules of Court, rule 4.413(c).)

The trial court read and considered the probation report, which correctly noted Nguyen was presumptively ineligible for probation, and concluded there were no unusual circumstances to overcome the presumption. We must therefore view the court's statements with this in mind. It appears the primary purpose of the court's comments was to assuage the feelings of Nguyen's family and friends, not to provide a thorough legal explication of sentencing issues. The record here falls short of overcoming the presumption this experienced trial judge misunderstood the scope of his sentencing discretion.

Even assuming the trial court erred, it is not reasonably probable the court would have exercised discretion to grant Nguyen probation. Nguyen, an active gang member, possessed and discharged a firearm, inflicting harm on two victims. No "fact or circumstance" indicated "the basis for the statutory limitation on probation" (use of a deadly weapon) was "not fully applicable to the case." (Cal. Rules of Court, rule 4.413, subd. (c)(1).) Nguyen's firearm use was not "substantially less serious than the circumstances typically present in other cases involving the same probation limitation . . . ." (Cal. Rules of Court, rule 4.413, subd. (c)(1)(A).) He did not "participate[] in the crime under circumstances of great provocation, coercion, or duress not amounting to a defense . . . ." (Cal. Rules of Court, rule 4.413, subd. (c)(2)(A).) And the crime was not "committed because of a mental condition not amounting to a defense . . . ." (Cal. Rules of Court, rule 4.413, subd. (c)(2)(B).) At age 23, Nguyen was not particularly "youthful" and he did have a significant record of prior criminal offenses, including vandalism (age 15) and the sale or transportation of methamphetamine (age 16)

12

as a juvenile, and possession of controlled substances and theft as an adult. (Health & Saf. Code, § 11377, subd. (a); Bus. & Prof. Code, § 4060; § 485.) He also had a pending case involving alleged possession of controlled substances for sale. Even if the trial court misunderstood its discretion, it would have made no difference in this case.

### III

### DISPOSITION

The judgment is affirmed.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

13