Filed 7/2/15  P. v. Brooks CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DONTAE DESHAWN BROOKS,<br><br>      Defendant and Appellant. | B259841<br><br>(Los Angeles County<br>Super. Ct. No. TA131437) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael J. Schultz, Judge.  Affirmed as modified.

John J. Uribe, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

A jury convicted defendant and appellant Dontae Deshawn Brooks of burglary and bribing a police officer. (Pen. Code, §§ 459; 67.)[1] The trial court found that Brooks suffered two prior strike convictions which also qualified as prior serious felony convictions. (§§ 667, subds. (b)-(i); 1170.12, subds. (a)-(d); 667, subd. (a)(1).) The trial court granted a motion to strike one of the two prior strikes, and then sentenced Brooks to state prison for a aggregate term of 24 years, 8 months.[2] Brooks filed a timely notice of appeal and we appointed counsel to represent him. Appointed counsel filed an opening brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). Brooks filed a letter brief asserting various claims of error. We affirm the judgment as modified.

**FACTS**

*The Crimes*

Early in the afternoon of December 30, 2013, Los Angeles County Sheriff's Department (LASD) Deputies Tony Franklin and Eddie Retamoza were on patrol in full uniform in a marked police vehicle when they noticed a van in the parking lot of the Compton Fashion Center mall with its driver's side door open. Two black males were by the van, one — later identified as Brooks — standing next to the open driver's side door of the van and the other — later identified as Marvin Randolph — standing near the rear of van. As the deputies drove closer to the van, Randolph started to walk away from the scene.

---

[1]    All further undesignated section references are to the Penal Code.

[2]    Sentence was calculated as follows: As to count 1, the upper term of six years, doubled to 12 years for one prior strike, plus a consecutive term of one-third the midterm or one year, four months on count 2, doubled for one prior strike, for an additional two years, eight months. The court further imposed two 5-year terms for the two prior serious felony convictions, for an additional 10 years.

The term on count 2 is an illegal sentence. The midterm for a conviction of section 67 is three years, so one-third the midterm should have been one year. (§ 67.) Doubling that, because of the prior strike, should have resulted in a two year term, not two years and eight months. Because the sentence is unauthorized, it may be corrected at any time. (*People v. Scott* (1994) 9 Cal.4th 331, 354-355.) We direct the trial court to correct the sentence to reflect a two year term on count 2.

The deputies decided to investigate, and detained Brooks and Randolph. During a search of Brooks, the officers found $5,800 in hundred dollar bills along with three pieces of gold jewelry in his front left and right pants pockets. During a search of Randolph, the deputies found a cell phone, black latex gloves, and some marijuana. Meanwhile, as the deputies were talking to Brooks, a female — India Brown — exited the van; Brown said she owned the van. The deputies searched the van and found more latex gloves, as well as a large plastic bag of miscellaneous jewelry comprised of gold pendants, necklaces, and rings.

Deputy Franklin advised Brooks of his *Miranda* rights,[3] and Brooks said he understood his rights.[4] When questioned about the items the deputies found during the searches, Brooks provided several explanations and stories which he changed a number of times. During the questioning, Deputy Retmoza powered on the cell phone found on Randolph and saw photos of "older white people," but no photos of Brooks or Randolph. Finding a contacts list, Deputy Retmoza called a contact listed as "Carol."

Carol O'Brien answered and explained that she and her brother, Robert O'Brien, had left her house in Orange County earlier that morning. Robert got on the phone and identified the cell phone as his, and stated that he had left it at Carol's house to charge, before leaving with Carol. When the deputies told Brooks that they had found the owner of the cell phone, Brooks confessed that he and Randolph had burglarized or "hit" a house and that the jewelry was stolen.

The deputies asked Carol O'Brien to return home and call them when she got there, which she did about 10 to 15 minutes later. Ms. O'Brien told the deputies that rooms in her house had been ransacked and that her jewelry was missing. Later, the O'Briens went to the Century Sheriff's Station and identified her jewelry and the cell phone.

---

[3]  *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

[4]  The record shows no objection to the admission of, or motion to suppress, the admission of Brooks's statements.

While Deputy Franklin was booking Brooks after his arrest, he "repeatedly" told the deputy to take the $5,800 that was found on him in exchange for letting him go. Deputy Franklin rejected the offer.

***The Criminal Case***

The People filed an information charging Brooks, Randolph and Brown[5] with first degree residential burglary (count 1; § 459), and charging Brooks with bribing a police officer (count 2; § 67). The information further alleged that Brooks had suffered two prior strike convictions (a 2011 first degree burglary conviction and a 2013 first degree burglary conviction), and two prior serious felony convictions (the same prior convictions). (§§ 667, subd. (a); 667, subds. (b)-(i); 1170.12, subds. (a)-(d).) The information also alleged one of the prior burglary convictions as a prior felony conviction with a prison term. (§ 667.5, subd. (b).)

The trial court granted Brooks's *Pitchess* motion.[6] Following an in camera review, the court ordered disclosure of discovery of a number of matters regarding the two arresting officers. Before trial, the court granted Brooks's motion to bifurcate the prior conviction allegations.

Brooks's case was called for jury trial, and a venire of prospective jurors was called to the courtroom for voir dire. Before the continuation of voir dire, Brooks asked to speak directly to the trial court,[7] and then stated that he was "wondering" why he was being tried in Los Angeles County when the alleged burglary occurred at the O'Brien home in Orange County. After both the prosecutor and defense counsel explained to the trial court that venue was proper in either Orange County or in Los Angeles County because materials stolen during the Orange County crime had been taken into Los Angeles County where Brooks was arrested, the court advised Brooks that he had his answer. During the afternoon trial session, Brooks, again speaking on his own, expressed

---

[5] Only Brooks is involved in the current appeal.

[6] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[7] Brooks was represented at trial by a deputy public defender.

concern that trial was "going too fast for [him]," that he did not "know anything about the case," and that, as a consequence, he did not know if he should accept an offered plea deal of 22 years. The court responded that Brooks had been in custody for more than five months, and that the jury was ready, and that trial was not going to be delayed. During an ensuing exchange with the court, Brooks asked: "So, even if I was to represent myself, you still won't delay it?" The court reiterated that the trial would not be delayed, then offered that Brooks would have time to decide what to do as there was other business for the court and the lawyers to handle, and for Brooks to consult with his lawyer, before the actual calling of witnesses began.

Four witnesses testified for the prosecution: the two arresting sheriff deputies, and Carol and Robert O'Brien. The prosecution's witnesses established the facts summarized above. In addition, Deputy Franklin testified that he had investigated hundreds of burglary cases and explained that the Compton Fashion Center mall and surrounding area had a large number of burglaries, and that there is a swap meet across the street from the mall which was a popular place for people selling stolen gold and jewelry. He had made several arrests of people for receiving stolen property at this location in the past. Deputy Franklin explained that it is common that criminals to use gloves in burglaries, including latex gloves, mechanics gloves, or even their own socks, to avoid leaving fingerprints. Further, Deputy Franklin explained that it was common for criminals who commit burglaries to use getaway cars.

The prosecution rested after the four witnesses noted above. The trial court denied a defense motion for acquittal. (§ 1118.1.) When the trial court asked if the defense was called any witnesses, Brooks's counsel replied: "I'm not prepared to call a witness. However, I'm also not 100 percent sure that I'd be resting. I'd spoken earlier about the possibility of calling either India Brown or Marvin Randolph as a witness. At present, I am quite certain that I'm not calling Ms. Brown. Earlier this morning, [Mr. Brooks] told me he did not want to testify. I would ask the court that I reserve the possibility of calling Mr. Randolph on Monday morning or, in the alternative, resting Monday morning." The court then excused the jurors until Monday, June 9, 2014.

5

At the start of the trial on Monday, Brooks's counsel advised the trial court that the defense had decided not to call Randolph and rested without presenting any defense evidence. The court then began instructing the jury. During a break, after the jurors had exited the courtroom, Brooks again spoke on his own behalf to voice an objection to the court that his defense counsel was not calling witnesses. The court told Brooks that his counsel had decided not to call any witnesses, that "that ship has sailed," and advised Brooks that he would be removed from the courtroom if he did not "sit down and be quiet."

After discussion of further jury instructions, Brooks again interjected to the trial court: "I can represent myself on my own." At that point, the trial court stated: "Mr. Brooks, no. Your request to go pro per is denied. It's untimely." In response, Brooks stated: "Your honor, I don't want to continue this trial if I can't call witnesses on my behalf. I don't want to continue this trial because he's not calling any of my witnesses." The court responded: "Mr. Brooks, if you have an outburst again, I'm going to remove you from the trial."

The jury found Brooks guilty as charged. The trial court found, based on the evidence it heard in his trial, that Brooks violated probation in another pending case. Brooks waived his right to a jury trial on the priors, and the trial court found all the alleged prior convictions true.

At the sentencing hearing, private attorney Kevin Donahue substituted in as Brooks's counsel of record in place of the public defender. The court then continued the sentencing hearing. Brooks' attorney filed a motion for new trial on the ground of new evidence and ineffective assistance of counsel. At argument on the motion, India Brown and Marvin Randolph appeared and represented that they would testify that Brooks had not been involved in the burglary of the O'Briens' home. The trial court denied Brooks's motion for new trial, finding it was not reasonably probable that the result of trial would have been any different.

The court granted Brooks's motion to strike one of his two prior strike convictions. The court then sentenced Brooks as noted above in this opinion.

Brooks filed a timely notice of appeal.

## DISCUSSION

We appointed counsel to represent Brooks on appeal. Appointed counsel filed a brief pursuant to *Wende, supra,* 25 Cal.3d 436, requesting independent review of the record on appeal for arguable issues. We then notified Brooks by letter that he could submit any claim, argument or issues that he wished our court to review. Brooks filed a letter brief, which we discuss below.

Brooks's letter brief offers an alternative version of events than that presented by the prosecution at his trial. Essentially, Brooks states that he received a phone call from Randolph "about jewelry for sale," that he drove to the Compton Fashion Center mall to meet with Randolph. He claims that shortly after he arrived, the police pulled up and began "harassing with no probable cause or a reasonable suspension [*sic*]." He denies he ever admitted to a burglary. Brooks claims the police "profiled" him, "violated [his] rights, and "never read [him his] Marandam [*sic*] rights."

We reject Brooks attempt to retry his case on appeal with new "evidence," or, to be more accurate, new assertions or theories. Brooks's argument is based on an apparent misunderstanding of the role of an appellate court. It is the exclusive function of the trier of fact to assess the evidence presented at trial, and to determine the facts based on the evidence; a reviewing court does not retry the case on appeal. Rather, it reviews the evidence that was presented to determine whether the jury's verdict is supported by substantial evidence. (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.)

Brooks next asserts that his attorney stated that he "was getting the case dropped to receiving stolen property" after hearing Randolph speak in open court that "he did the burglary." Brooks asserts his "witnesses were there Monday ready to testify before [his] attorney rested the case before closing arguments. Th[ere] was no reason not to let them testify . . . ." We understand Brooks to be making a claim of ineffective assistance of counsel. We reject Brooks's claim because it is based on matters outside the record on appeal. Brooks's claim regarding witnesses who did not testify must be made by a procedural path other than an appeal, supported by a proper showing. (See, e.g.,

7

*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267 [an ineffective assistance claim may be better suited to a petition for writ of habeas corpus].)

Brooks further claims the trial court "wasn't giving [his] attorney time to investigate [his] witness[es]." Apparently, Brooks is arguing that he should have been granted a continuance of trial. Generally, a continuance may be granted only on a showing of good cause. (§ 1050, subd. (e).) To obtain a continuance, defendant must show he "exercised due diligence and all reasonable efforts to prepare for trial . . . ." (*People v. Grant* (1988) 45 Cal.3d 829, 844.) A court has broad discretion to deny a motion for a continuance. (*Ibid.*) We find Brooks's conclusory argument to be insufficient to establish that the trial court abused its discretion in not continuing trial, and insufficient to show that he was prejudiced by the court's error, if any.

Brooks asserts he "didn't have a fair trial." He states that his case was "pushed through" and that he was "judged by [his] past instead of the merits of his case." Our discussion as to this claim is the same as we explained above concerning a continuance. We also reject Brooks's contention that he was judged by his past, as the record demonstrates that the prior conviction allegations were bifurcated and evidence of his past was not presented to the jury.

Brooks asserts the trial court imposed "two 5 year prison prior [terms] when [he] only been [*sic*] to prison one time. The second one was county time so that should be a one year enhancement." In so far as Brooks is arguing that the evidence does not support the trial court's finding that he had suffered two prior serious felony convictions, we are not persuaded. The information alleged that Brooks suffered a prior conviction for first degree burglary in 2011 in case No. BA378904, and that he suffered a prior conviction for first degree burglary in 2013 in case No. TA126454. At the trial of the prior conviction allegations, the court reviewed documentary records showing that both prior conviction allegations were true — in case No. BA378904 the court reviewed documents showing the conviction; in case No. TA126454 the court still had its court file of the conviction as it was before the court as the foundation for a probation violation

proceedings. We are satisfied that the evidence supports the trial court's finding that Brooks had two prior serious felony convictions.

Last, Brooks questions how the trial court "struke [*sic*] a strike and still used them." The court did not use a prior strike that had been stricken. The record shows that Brooks had two prior strike convictions, and that the court granted a motion to strike one of the strikes. Brooks was sentenced as a second, not third strike offender. His term was doubled, as is required for a defendant who has on prior qualifying strike. (§§ 667(e)(1), 1170.12(c)(1).) A third strike offender is sentenced to an indeterminate term of life. (§§ 667(e)(2), 1170.12(c)(2).) However, the same prior convictions were used, as is required, to add two five-year enhancements to his sentence. (§ 667(a).) Though the court struck one prior for purposes of the Three Strikes law, it is not permitted to strike a prior serious conviction for purposes of enhancement. (*People v. Murillo* (1995) 39 Cal.App.4th 1298.)

We have independently reviewed the record on appeal, and find that appointed counsel has fulfilled his duty, and that no arguable issues exist. (*Wende, supra,* 25 Cal.3d 436, *People v. Kelly* (2006) 40 Cal.4th 106.)

## DISPOSITION

The judgment is ordered modified to reflect a two-year term on count 2, and, as modified, is affirmed. The trial court is directed to prepare a new abstract of judgment.

BIGELOW, P. J.

We concur:

RUBIN, J.

FLIER, J.

9