Filed 3/20/26  P. v. Brown CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085360 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD299573) |
| CALVIN BROWN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Theodore M. Weathers, Judge.  Affirmed.

James M. Kehoe, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

Starting in the early morning hours of July 3, 2023, Calvin Brown went on a crime spree, stealing multiple vehicles and other items, shooting at several individuals, and evading arrest.  A jury found him guilty of 26 of 31 alleged counts, and made true findings on numerous associated enhancements.  Brown asserts there was insufficient evidence to support one of four counts of carjacking, and that the trial court should have either stayed

the sentence on count 23 (carjacking) or on count 27 (assault with a semi-automatic firearm) pursuant to Penal Code section 654[1] because the crimes occurred during an indivisible course of conduct with a single objective. We find no error and affirm the judgment.

## I.    FACTUAL AND PROCEDURAL HISTORY

The day before the crime spree, on July 2, Brown exchanged several text messages with the mother of his infant daughter. Brown was upset about not getting to see the child and was, at times, threatening towards the child's mother.

Unable to see his daughter, Brown decided to "block[ ] things out" by "partaking in some drug use." He got into an altercation with an acquaintance and vandalized the individual's car. Not long after, at about 3:40 a.m. on July 3, Brown stole a car at gunpoint, in what would be the first in a series of carjackings.

Brown met up with a female, Rolaena Blunt, and the two continued to use drugs over the next two days. Brown also continued to argue with his child's mother. He made additional threats and eventually, on July 5, appeared at the home where his daughter and her mother lived, hoping to see the child one more time before leaving town. They were not home but Brown shot at other individuals and a dog that were in the home. Brown then went to another house where he thought the mother might be, and fired shots there as well.

At that point, Brown was concerned that he "just did two shootings" and needed to leave town immediately. Having not slept in two days, Brown drove off in the stolen vehicle, dozed off, and crashed. After impact, Brown

---

[1]    Further unspecified statutory references are to the Penal Code.

2

jumped out of the vehicle, hopped a fence, and approached another vehicle, occupied by Ernesto A. and Jose A., pointed his firearm at the window and told Ernesto to give him the keys and get out of the car. Ernesto and Jose complied and Brown drove away in the car. This incident is the subject of the carjacking charges in counts 20 and 21 and is discussed in further detail *post*.

The second stolen car began to stall about 15 minutes later and lost power. Brown jumped out, ran up the street, and approached another vehicle. As he approached, the occupant, Gabriel F., exited. Brown approached Gabriel, with his firearm in his hand. Brown raised the firearm toward Gabriel and instructed him to get out of the vehicle. Gabriel complied. As Brown was leaving, Gabriel flagged down another vehicle, driven by Jake W. Gabriel got into Jake's vehicle and they followed Brown, who soon turned onto a dead-end street. As the vehicle approached, Brown stepped out and fired four shots at them. Gabriel and Jake ducked down and, when the shooting ceased, Jake reversed and exited the street. Worried that Gabriel had called the police, Brown parked the car and fled on foot. This incident is the subject of the carjacking charge in count 23 and the assault with a semi-automatic firearm charge in count 27, and is also discussed in further detail *post*.

Brown was arrested not long after. The People charged Brown with 31 separate counts:

Counts 1, 29: ................................ vandalism
Counts 2, 20-21, 23: .................... carjacking
Counts 3, 11, 14, 19, 22, 24, 31: . possession of a firearm by a felon
Count 4: ...................................... hit and run
Count 5: ...................................... evading with reckless driving
Count 6: ...................................... residential burglary

3

Counts 7-8, 12, 25-26: ................. attempted murder

Counts 9-10, 13, 16-18, 27-28: ....assault with a semi-automatic firearm

Count 15: .................................... robbery

Count 30: ................................... carrying a loaded firearm

On the five counts of attempted murder, the jury found Brown not guilty on three and was unable to reach a verdict on the other two. The jury found Brown guilty on all remaining charges, and found numerous associated allegations to be true.

Prior to sentencing, at the People's request, the trial court dismissed six of the seven counts of possession of a firearm by a felon (11, 14, 19, 22, 24, and 31) as each was based on possession of the same firearm used during the various incidents leading to the other charges.

The trial court then sentenced Brown to an aggregate term of 59 years 8 months on the remaining charges.

Brown filed a timely notice of appeal.

## II.   DISCUSSION

Brown's arguments on appeal are limited to just three of the numerous counts upon which he was convicted and sentenced. He asserts that there was insufficient evidence to support the conviction on count 21; and, that the trial court should have stayed either the sentence on count 23 or count 27 because they were part of a single indivisible course of conduct. We are not persuaded by either argument.

## A.   Sufficient Evidence Supports the Conviction for Count 21

The jury convicted Brown on one count of carjacking as to the driver Ernesto A. (count 20) and one count of carjacking as to the passenger Jose A. (count 21). Brown contends there was not sufficient evidence to support the conviction for carjacking Jose A. in count 21.

4

" 'In reviewing a challenge to the sufficiency of the evidence, . . . we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.)  " 'We do not reweigh evidence or reevaluate a witness's credibility.' " (*Ibid*.)  " 'We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*Ibid*.)  " ' "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." ' " (*Ibid*.)

The substantial evidence standard of review is a deferential standard. " 'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record,* there is substantial evidence, contradicted or uncontradicted, which will support the determination.' " (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 681.)  An appellant challenging the sufficiency of the evidence under the foregoing standards "bears an enormous burden." (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.)

Carjacking is defined as "the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." (§ 215, subd. (a).)  "[A] completed

5

carjacking occurs whether the perpetrator drives off with the carjacking victim in the car or forcibly removes the victim from the car *before* driving off." (*People v. Lopez* (2003) 31 Cal.4th 1051, 1062 (*Lopez*).) " 'In the usual case of carjacking involving multiple occupants, all are subjected to a threat of violence, all are exposed to the high level of risk which concerned the Legislature, and all are compelled to surrender their places in the vehicle and suffer a loss of transportation. All are properly deemed victims of the carjacking.' " (*People v. Hill* (2000) 23 Cal.4th 853, 859 (*Hill*).)

Here, Ernesto testified at trial; Jose did not. Brown asserts that, as a result, there was not substantial evidence that the gun was ever pointed at Jose, or that Jose was afraid at any point during the carjacking. Not so. Ernesto testified that, on the day of the carjacking, he and Jose were *in the car*, relaxing under a tree. Ernesto was sitting in the driver's seat and Jose was in the passenger seat. Brown approached the vehicle, carrying a backpack. Brown took a gun from the backpack and pointed it at Ernesto's head. The barrel was approximately one foot from Ernesto's head. Brown attempted to open the driver's side door, but it was locked. He then said give me the keys and throw your phone. He also said, two or three times, that he would kill Ernesto if he did not comply. Ernesto got out of the car and Brown got into the driver's seat. Ernesto felt "that I was dead," or going to die, during the altercation.

While Brown was holding the gun to Ernesto's head, his female companion, Blunt went around to the passenger side of the car and took Jose's phone. Jose got out of the car and Blunt got into the passenger seat. Before leaving, Brown told Ernesto to throw his phone over a nearby fence, presumably so that Ernesto could not call the police. Jose had another phone, which they used to call 911. Both Ernesto and Jose could be heard

6

talking on the call, which was played for the jury. Brown turned around and came back. Ernesto dropped the phone so Brown would not see. Brown pointed the gun at Ernesto and asked for his phone. Ernesto said that he had thrown it over the fence and Brown left.

From this evidence, we have no trouble concluding that the jury could infer that Jose was aware of what was happening and was also removed from the car using force or fear. Brown suggests that Jose may have been asleep when the carjacking occurred. To the contrary, Blunt took Jose's phone and got into the passenger seat, where Jose had been sitting, all while Brown was holding the gun to Ernesto's head, in the seat right next to Jose. There is no other explanation for Jose giving the woman his phone and getting out of the car, other than that he also felt forced and/or afraid, based on the gun being held to Ernesto's head. (See, e.g., *People v. Holt* (1997) 15 Cal.4th 619, 690 ["Fear may be inferred from the circumstances in which a crime is committed or property is taken"].) A reasonable jury easily could have inferred that the force or fear used "was directed at both" Ernesto and Jose. (See *Hill, supra*, 23 Cal.4th at p. 857.)

Based on the foregoing, we conclude there was substantial evidence to support the conviction for carjacking as to Jose in count 21.

## B. The Trial Court Did Not Err by Imposing Sentences on Both Counts 23 and 27

Brown next asserts that the trial court erred by sentencing him to consecutive terms of one-third the middle term on each of counts 23 (carjacking) and 27 (assault with a semi-automatic firearm).[2] The assault

---

[2] In addition, the court sentenced Brown to additional 3 years 4 months on count 23, based on the enhancement in section 12022.53, subdivision (b) and an additional 1 year 4 months on count 27, based on the enhancement in section 12022.5, subdivision (a).

was based on Brown shooting the gun when Gabriel and Jake followed him onto the dead-end road. Brown contends the trial court should have stayed one of the sentences under section 654.

Section 654, subdivision (a) provides, in relevant part "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."

"Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective." (*People v. Corpening* (2016) 2 Cal.5th 307, 311.) If we conclude, as we do here, "that the case involves more than a single act—i.e., a course of conduct . . . we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives." (*Ibid.*)

"The determination of whether there was more than one objective is a factual determination, which will not be reversed on appeal unless unsupported by the evidence presented at trial." (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.) " 'We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence.' " (*People v. Vang* (2010) 184 Cal.App.4th 912, 916.)

Because the trial court sentenced Brown on both counts 23 and 27, we presume the trial court made an implied finding that section 654 did not apply, and that the two crimes had separate objectives. (See *People v. Kelly* (2018) 28 Cal.App.5th 886, 904 ["When there is no 'explicit ruling by the trial court at sentencing, we infer that the court made the finding appropriate to

8

the sentence it imposed.' "].) Brown asserts the trial court's implied finding was not supported by the evidence and further argues that his intent when he committed the second offense of assault with a semiautomatic firearm was to escape. Even accepting that explanation, we conclude the two crimes had separate objectives and that section 654 does not apply.

As discussed, *ante*, carjacking occurs when a defendant either "drives off with the carjacking victim in the car or forcibly removes the victim from the car *before* driving off." (*Lopez, supra,* 31 Cal.4th at p. 1062.) "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) Section 245, subdivision (b) makes it a felony to "commit[ ] an assault upon the person of another with a semiautomatic firearm."

While there have been cases in which an assailant assaulted the victim with a gun *in order to steal their car*, such that the assault was part of the act or conduct inherent in the carjacking itself, that is not the case here. Here, Brown had already taken possession of the vehicle, after threatening Gabriel with the same firearm on a different street when he committed the *additional* act of shooting at Gabriel and Jake. His objective during the carjacking was to obtain a car, and the trial court could fairly find that the principal object of the carjacking had been achieved once he drove off. (See *Lopez, supra,* 31 Cal.4th at p. 1062.) It was only afterwards, when Brown accidentally drove down a dead-end street and found himself confronted by Gabriel and Jake (who was not even involved in the original carjacking), that he fired the shots that served as the basis for the assault charge. (See *People v. Cleveland* (2001) 87 Cal.App.4th 263, 272 [" 'Section [654] cannot, and should not, be stretched to cover gratuitous violence or other criminal acts far beyond those reasonably necessary to accomplish the original offense.' "].)

Brown's reliance on *In re L.J.* (2021) 72 Cal.App.5th 37 (*In re L.J.*) and *People v. Martin* (2005) 133 Cal.App.4th 776 (*Martin*) is misplaced.

The juvenile defendant in *In re L.J.* was attempting to evade police when he came to the end of a dead-end street. (*In re L.J., supra,* 72 Cal.App.5th at p. 42.) He turned around and drove his vehicle, at a relatively low rate of speed, towards officers and struck three police vehicles while attempting to evade the police. (*Ibid.*) The juvenile court sustained a petition that alleged reckless evasion of a police officer (Veh. Code § 2800.2, subd. (a)); assault with a deadly weapon on a police officer (§245, subd. (c)); and assault with force likely to produce great bodily injury (§245, subd. (a)(4)). (*In re L.J.,* at p. 41.) L.J. asserted, and the appellate court agreed, that the punishment for evading a police officer should be stayed because it was based on the same course of conduct as the assault counts. (*Id.* at p. 44.) The court explained: "The low speed of the [vehicle] (10 to 15 miles per hour), together with the fact that the minor evidently slalomed between the three police vehicles and struck them largely on the sides of the [vehicle] and not head-on, indicates the minor was trying to get past the police vehicles rather than targeting them." (*Ibid.*)

Likewise, in *Martin*, the two charges at issue were evading arrest and battery on a police officer. (*Martin, supra,* 133 Cal.App.4th at p. 780.) The court found that the battery "does not appear to have been intentional, but merely the result of appellant's physical gyrations aimed at freeing himself." (*Id.* at p. 781.) Thus, the battery was incidental to the evading arrest conviction and section 654 applied to stay the execution of sentence on one of the two offenses. (*Martin,* at p. 781.)

To the contrary, here, there was no charge for evading police or arrest, such that the assault could not have been incidental to the evasion. Rather,

as we have explained, Brown already had possession of Gabriel's car when he shot at Gabriel and Jake. The trial court could readily conclude that shooting at the victims was not integral to stealing the car, particularly given that the shooting did not occur until well after the victims were out of the car, Brown had taken possession, and had driven away. Likewise, the shooting was not in close temporal or spatial proximity to the carjacking, which had already concluded. Gabriel and Jake chased after Brown and he fired a "warning" shot, or four, to get them to stop their pursuit.

As a final matter, Brown asserts the jury's verdict of not guilty on the attempted murder charges confirms that he did not have the intent to kill Gabriel or Jake. This is beside the point. Assault does not require an intent to kill, nor does the absence of an intent to kill somehow indicate whether the assault was integral to the carjacking, or done to achieve the same object. Here, the evidence suggests that when Brown fired the shots, he was attempting to flee, to evade capture and/or to continue his crime spree, with the car he had already stolen.

## III.    DISPOSITION

The judgment is affirmed.

KELETY, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DATO, J.

11